**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

JED GOLDART,                                    Case No. 8:26-cv-01739-JRR
     *Plaintiff*
vs.

VANGUARD PARKING SOLUTIONS, INC.,
     *Defendant*

_____/

**DEFENDANT VANGUARD PARKING SOLUTIONS, INC.'S MOTION TO COMPEL**
**ARBITRATION AND STAY PROCEEDINGS**

Defendant Vanguard Parking Solutions Inc. ("Vanguard") moves under sections 3 and 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. sections 3-4, to compel Plaintiff Jed Goldart to arbitrate his claims against Vanguard on an individual basis and to stay this action pending arbitration.

**INTRODUCTION**

This is a posted-parking-contract arbitration case. Plaintiff alleges that he parked at the 6831 Wisconsin Avenue private parking facility, exceeded the posted two-hour free-parking period, received Vanguard Parking Payment Notices, and paid several of those notices by check. The Complaint itself reproduces the parking sign that governed the facility. That sign states, in large type, "PARKING CONTRACT - PRIVATE PROPERTY" and "IF YOU DO NOT CONSENT TO THIS CONTRACT, EXIT NOW." It then states that by parking, the driver agrees to the contract with Vanguard and that unresolved disputes will be resolved by binding arbitration. Thus, an arbitration agreement was formed when Mr. Goldart chose to enter and park in the private

facility after the posted Parking Agreement gave notice of the terms and told non-consenting drivers to exit.

The Complaint confirms the facts necessary to compel arbitration. It alleges that Mr. Goldart parked at 6831 Wisconsin, that Vanguard recorded license plates, obtained owner information, mailed Parking Payment Notices, and sought payment arising from those parking sessions. Compl. ¶¶ 17-25. The single DPPA count challenges the same monitoring, license-plate capture, DMV lookup, notice, payment, and collection conduct addressed by the posted Parking Agreement. Compl. ¶¶ 36-48.

While this appears to be an issue of first impression in Maryland, the most analogous federal decisions on this exact question have compelled arbitration. In *Brant v. Parking Revenue Recovery Services, Inc.*, another putative parking-notice class action, the District of Colorado compelled arbitration based on posted parking-lot signs. The court rejected objections that the signs were not actually read, were poorly located, or should have been accompanied by a gate, stop sign, or click-through, holding: "Clearly posting signs is enough." *Brant v. Parking Revenue Recovery Servs., Inc.*, No. 1:25-cv-01771-GPG-NRN, ECF No. 36, at 20 (D. Colo. Apr. 14, 2026). The same result should follow here under Maryland law and the FAA.

For the reasons below, the Court should compel Mr. Goldart to arbitrate his claims against Vanguard individually and stay this action pending arbitration.

## FACTUAL BACKGROUND

1. The facility at issue is the garage at or near 6831 Wisconsin Avenue in Bethesda/Chevy Chase, Maryland, identified in Vanguard records as lot MD-102, Shops of Wisc. Goldman Declaration, ¶¶ 4-5. (Attached hereto as **Exhibit 1**.)

2.      The Complaint attaches and quotes the posted Vanguard sign at that facility. The top of the sign states: "PARKING CONTRACT - PRIVATE PROPERTY" and "IF YOU DO NOT CONSENT TO THIS CONTRACT, EXIT NOW." Compl. ¶¶ 17-18; Goldman Decl. ¶¶ 6.

3.      The sign states that by parking at the facility, the driver agrees to the terms of the contract with Vanguard, the owner, and/or the parking operator. It also advises that Vanguard records activity at the facility using video-recording equipment. Compl. ¶¶ 18; Goldman Decl. ¶¶ 7.

4.      The face of the sign includes arbitration and class-waiver language. It states: "ARBITRATION: Unresolved disputes shall be resolved through binding arbitration." It further states that "Vanguard and you waive their rights to jury trial and you agree that you may not bring a claim as part of a class action." Compl. ¶ 18; Goldman Decl. ¶ 9.

5.      The full Parking Agreement available through the sign confirms the same obligation. It provides that, except as otherwise required by applicable law, "any and all disputes, claims or controversies between you and Vanguard arising from parking at the Facility or under this Contract, which are not amicably resolved, shall be settled through binding arbitration administered by the AAA under its Consumer Arbitration Rules," and that the FAA applies. Goldman Decl. ¶ 10.

6.      The Complaint alleges that, in early 2025, Mr. Goldart regularly exercised at a health club near 6831 Wisconsin and, on a few afternoons, parked slightly longer than the two free hours advertised at the facility. Compl. ¶ 22.

7.      Vanguard records identify four tickets associated with Mr. Goldart, Maryland plate 84778CA, for a 2007 Honda Pilot, all at lot MD-102. Goldman Decl. ¶ 12. The recorded stays

were between 138 and 156 minutes, exceeding the posted two-hour limit by between 18 and 36 minutes. *Id.* ¶¶ 12.

8.      The tickets - 1CA33, EB1B9, 47B73, and 8BB8E - were paid by paper check and processed internally. Goldman Decl. ¶¶ 13.

9.      The Complaint alleges the same basic sequence: Vanguard recorded Mr. Goldart's license plate, obtained owner information through the MVA, mailed Parking Payment Notices, and Mr. Goldart made several payments by check. Compl. ¶¶ 23-25.

10.     Vanguard relies on the posted Parking Agreement as the basis for compelling arbitration. Goldman Decl. ¶ 11.

11.     Vanguard also relies on its arbitration clause which is attached to each of the tickets that Mr. Goldart received and paid for. Goldman Decl. ¶ 15.

12.     Vanguard also relies on the fact that Mr. Goldart clicked the Vanguard website link, and searched his tickets. By clicking on the search tab on Vanguard's website, Mr. Goldart became bound by Vanguards terms of service, including its arbitration provisions. Goldman Decl. ¶ 16.

## LEGAL STANDARD

Under section 2 of the FAA, a written arbitration provision in a contract involving commerce is valid, irrevocable, and enforceable except on grounds that exist at law or in equity for the revocation of any contract. 9 U.S.C. section 2. Section 4 authorizes a party aggrieved by another party's refusal to arbitrate to petition for an order compelling arbitration. 9 U.S.C. section 4. Section 3 requires the Court, upon request, to stay litigation of issues referable to arbitration. 9 U.S.C. section 3.

In the Fourth Circuit, the moving party must establish the four *Adkins* elements: a dispute, a written arbitration provision that purports to cover the dispute, a relationship to interstate commerce, and the opposing party's refusal to arbitrate. *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002). Contract formation is governed by ordinary state-law principles, but courts place arbitration agreements on equal footing with other contracts and enforce them according to their terms. *Naimoli v. Pro-Football, Inc.*, 120 F.4th 380, 393-94 (4th Cir. 2024).

**ARGUMENT**

**I. The FAA requires enforcement of the parties' arbitration agreements.**

The FAA reflects a federal policy favoring arbitration agreements and requires courts to enforce written arbitration agreements according to their terms. 9 U.S.C. section 2; M*oses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). A party seeking to compel arbitration in the Fourth Circuit must show: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision purporting to cover the dispute; (3) the relationship of the transaction to interstate or foreign commerce; and (4) the opposing party's failure, neglect, or refusal to arbitrate. *Adkins v. Labor Ready, Inc.,* 303 F.3d 496, 500-01 (4th Cir. 2002).

Each element is satisfied here. There is an active dispute. There are written arbitration provisions in the posted Parking Agreements. The transactions affect interstate commerce: Vanguard is an out-of-state parking-technology and notice-administration company; the notices and payment portal use interstate mail; and Plaintiffs assert a federal DPPA claim arising from motor-vehicle-record access and use. Plaintiffs have refused to arbitrate by filing and maintaining this lawsuit in court.

Once a court finds that the dispute is subject to arbitration, section 3 requires a stay if requested. 9 U.S.C. section 3; *Smith v. Spizzirri,* 601 U.S. 472 (2024). Vanguard requests a stay pending arbitration.

**II. Maryland contract law recognizes parking lot signage as a binding contract.**

Because this case concerns Maryland parking facilities and Maryland residents, Maryland contract-formation principles govern whether the parties formed an arbitration agreement, while the FAA governs enforceability. Under Maryland law, contract formation turns on objective manifestations of assent. The essential inquiry is whether the parties manifested an intent to be bound to sufficiently definite terms. *Cochran v. Norkunas*, 398 Md. 1, 14, 919 A.2d 700, 708 (2007). A contract may be express, or it may be implied in fact from the parties' conduct and the surrounding circumstances. *Mogavero v. Silverstein,* 142 Md.App. 259, 275, 790 A.2d 43 (2002).

The posted Parking Agreement supplied the offer and the method of acceptance. It identified the facility as private property, identified Vanguard, stated that by parking the driver agreed to the contract, and gave a simple alternative: "IF YOU DO NOT CONSENT TO THIS CONTRACT, EXIT NOW." Compl. ¶ 18; Goldman Decl. ¶¶ 6. Mr. Goldart accepted by entering, parking, and using the private facility instead of exiting. The consideration was equally plain: the owner and Vanguard permitted the temporary use of private parking property, and the driver accepted the conditions attached to that license.

Even based exclusively on the allegations of the Complaint, neither Plaintiff could not reasonably have determined when he drove into the facility that he was entitled to do so for free indefinitely. The surrounding circumstances facing him, particularly the clearly commercial nature of the facility and the posted signage discussing payment terms which Plaintiff himself references

in his Complaint, made it clear that he was entering private property and was thus subjecting himself to the posted terms should he choose to leave his vehicle on someone else's property.

The Complaint's anticipatory objection to this clear flaw in its allegations - that a driver would need to stop and exit the vehicle to read the sign - does not defeat contract formation. Compl. ¶ 20. The objective inquiry is whether the terms were posted and whether the driver accepted the benefit of parking after notice was available. Maryland law does not permit a party to accept the benefit of private property while avoiding posted conditions by saying he chose not to read them.

*Brant* is directly on point. There, the court enforced an arbitration clause based on posted parking signage despite plaintiffs' arguments that the signs were not actually read, were not visible enough, and should have been supplemented by a gate, stop sign, speed bump, or click-through. The court held that "[c]learly posting signs is enough" and that drivers "have to ascertain the rules before locking their car and walking away." *Brant*, No. 1:25-cv-01771-GPG-NRN, ECF No. 36, at 20. It concluded that each plaintiff "entered into a valid contract and arbitration agreement when they parked in the lots." *Id.*

The same reasoning applies with greater force here. The Complaint itself reproduces Vanguard's sign and confirms that it was posted at the entrance area of the same facility where Mr. Goldart parked. Compl. ¶¶ 17-18. The sign states that it is a contract, instructs non-consenting drivers to exit, states that parking is the act of assent, and states the arbitration and class-waiver terms on the face of the sign. Compl. ¶ 18; Goldman Decl. ¶¶ 6-9.

### III. The arbitration provisions cover Plaintiffs' claims.

The arbitration provision is broad. The full Parking Agreement covers "any and all disputes, claims or controversies between you and Vanguard arising from parking at the Facility

or under this Contract," with arbitration administered by the AAA under its Consumer Arbitration Rules and governed by the FAA. Goldman Decl. ¶ 11. The face of the sign separately states that unresolved disputes shall be resolved through binding arbitration and that class claims are waived. Compl. ¶ 18; Goldman Decl. ¶ 9.

Mr. Goldart's claim falls at the center of that language. The Complaint challenges Vanguard's alleged video monitoring, license-plate capture, MVA lookup, mailing of Parking Payment Notices, assessment of parking charges, and collection of payments arising from Mr. Goldart's parking sessions. Compl. ¶¶ 1-4, 16, 21-25, 36-48. The posted Parking Agreement expressly addresses video monitoring, vehicle-owner information, DPPA-related data access, Parking Payment Notices, parking charges, disputes and appeals, collections, and arbitration.

A plaintiff cannot avoid arbitration by labeling a parking-contract dispute as a statutory privacy claim. The question is whether the claim arises from, relates to, or is connected with the parking relationship governed by the agreement. It does. Any residual doubts about scope are resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Judge Singhal's decision in *Cicale v. Professional Parking Management Corp.* reinforces that framing. *Cicale* was a materially similar private-parking DPPA and parking-notice case. Although it was not an arbitration ruling, the court explained that the alleged DPPA violation did not arise in a vacuum: it occurred only after the plaintiff used private parking property and failed to pay for that use. Judge Singhal characterized that predicate conduct as theft and trespass under Florida law and observed that the case did not even reach the DMV lookup until after the plaintiff had "used Defendant's property and failed to pay for that use." *Cicale v. Prof'l Parking Mgmt.*

Page 8 of 10

*Corp.*, Case No. 24-61146-CIV-SINGHAL, Order at 9-10 (S.D. Fla. Apr. 30, 2026)(A copy is attached hereto as **Exhibit 2**).

That is precisely the relationship Vanguard's posted Parking Agreement regulates.

**IV. This action should be stayed as to Vanguard.**

As the named Plaintiff manifested his consent to be bound to a contract with Vanguard which mandates arbitration as the sole method of resolving the disputes they now bring to this Court, the proper disposition is an order compelling Plaintiff to arbitrate his claims against Vanguard individually and staying this action as to Vanguard pending completion of arbitration. 9 U.S.C. sections 3-4; *Smith*, 144 S. Ct. at 1176-78.

**CONCLUSION**

Vanguard respectfully requests that the Court enter an order: (1) compelling Plaintiff Jed Goldart to arbitrate his claims against Vanguard on an individual basis; (2) staying this action pending completion of arbitration; and (3) granting all further relief the Court deems just and proper.

Respectfully Submitted,

By: /s/Justin M. Daniel, Esquire, (#20187)
25 Hooks Lane, Suite 210
Baltimore, Maryland 21208
(410) 547-0480
jdaniel@davidefink.com
*Attorney for Defendant Vanguard Parking Solutions, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on July 6 , 2026, a copy of the foregoing was filed through the Court's

CM/ECF system, which will send notice to all counsel of record.

/s/Justin M. Daniel