**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

JED GOLDART,
*Plaintiff*
vs.

Case No. 8:26-cv-01739-JRR

VANGUARD PARKING SOLUTIONS, INC.,
*Defendant*
______________________________________/

**DEFENDANT VANGUARD PARKING SOLUTIONS, INC.'S SUPPLEMENT TO ITS MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Defendant Vanguard Parking Solutions, Inc. ("Vanguard"), by undersigned counsel, respectfully submits this Supplement to its Motion to Compel Arbitration and Stay Proceedings, ECF No. 7.

Vanguard's Motion establishes that Plaintiff Jed Goldart agreed to arbitrate by entering and parking at the private parking facility located at or near 6831 Wisconsin Avenue after the posted Parking Agreement expressly informed drivers that parking constituted acceptance of its terms, including binding arbitration. ECF No. 7 at 1–9. The Motion and supporting declaration also establish that Mr. Goldart received four Parking Payment Notices containing additional arbitration language and paid each notice by check. *Id.* at 3–4; ECF No. 7-1 ¶¶ 12–15.

The supporting declaration establishes a further, independently sufficient basis for compelling arbitration: Mr. Goldart used Vanguard's online portal to search for his notices on three separate occasions after the portal expressly informed him that, "[b]y searching, you agree to our Privacy Policy and Terms of Service." ECF No. 7-1 ¶ 16 & Exs. B–C.

Under controlling Fourth Circuit authority, online assent does not require a separately checked box or a button labeled "I agree." A user objectively manifests assent when a website provides clear and conspicuous notice that clicking a transactional button constitutes agreement to linked terms and the user thereafter clicks that button. *Dhruva v. CuriosityStream, Inc.*, 131 F.4th 145, 151–55 (4th Cir. 2025). That is precisely what occurred here.

Accordingly, Mr. Goldart is bound by Vanguard's arbitration agreement on three independent grounds: his parking at the facility after notice of the posted Parking Agreement; his receipt and payment of four notices containing arbitration language; and his repeated use of Vanguard's online search portal after being expressly informed that searching constituted agreement to Vanguard's Terms of Service.

**ADDITIONAL FACTUAL BACKGROUND**

Vanguard's records identify four Parking Payment Notices issued in connection with Mr. Goldart's parking at the 6831 Wisconsin Avenue facility: Ticket Nos. 1CA33, EB1B9, 47B73, and 8BB8E. ECF No. 7-1 ¶ 12. Vanguard's records show that all four notices were paid by checks mailed to and processed by Vanguard. *Id.* ¶ 13.

Although Mr. Goldart did not make those payments through Vanguard's online portal, he separately accessed the portal to search for the notices. Vanguard's ordinary-course records show that Mr. Goldart used the portal on January 9, January 16, and March 20, 2025. *Id.* ¶ 16 & Ex. B.

To conduct a search, a user enters the relevant notice or vehicle information and clicks the operative search button. Directly above that button, the portal states: "By searching, you agree to our Privacy Policy and Terms of Service." *Id.* ¶ 16 & Ex. C.

The phrases "Privacy Policy" and "Terms of Service" are hyperlinks through which the user may review the governing documents before conducting the search. *Id.* The notice, hyperlinks,

and search button appear together on the same page, with the assent language immediately above the button through which the user submits the search. *Id.* & Ex. C.

The Terms of Service contain Vanguard's arbitration provision. Id. ¶ 16. Thus, on each of the three occasions that Mr. Goldart elected to search for his notices, he did so after being expressly informed that the act of searching constituted agreement to Vanguard's Terms of Service.

**ARGUMENT**

**I. Online assent does not require a separate checkbox or a button labeled "I agree."**

Maryland follows the objective theory of contracts. Whether an agreement was formed depends upon the outward manifestations of the parties, viewed from the perspective of a reasonable person, rather than an undisclosed subjective intent not to be bound. *Cochran v. Norkunas*, 398 Md. 1, 16–17, 919 A.2d 700, 709–10 (2007). Assent may be manifested through conduct as well as through spoken or written words. *Porter v. Gen. Boiler Casing Co.*, 284 Md. 402, 411, 396 A.2d 1090, 1095 (1979).

Those principles apply equally to contracts formed online. The relevant inquiry is whether the website provided reasonably conspicuous notice of the terms and whether the user thereafter took an action that objectively manifested assent. *Dhruva v. CuriosityStream, Inc.*, 131 F.4th 145, 151–55 (4th Cir. 2025); *see also Marshall v. Georgetown Memorial Hospital*, 112 F.4th 211, 218–22 (4th Cir. 2024).

In *Dhruva*, the users completed a website transaction by clicking a button labeled "Sign up now." 131 F.4th at 148–49. The website did not require a separate checkbox, and the transactional button itself was not labeled "I agree" or "I accept." Nevertheless, the Fourth Circuit held that the users had entered an enforceable agreement containing an arbitration provision. *Id.* at 152–55.

The Fourth Circuit explained that a button need not itself bear the words "I agree" or "I accept." *Id.* at 154. Rather, "a clear and conspicuous notice that a click . . . will be taken as assent can do the trick." *Id.* (quoting *Marshall*, 112 F.4th at 222). When the website informs a user that performing the identified action will signify agreement to linked terms, the user objectively manifests assent by proceeding with that action. *Id.* at 154–55.

Thus, the absence of a separate checkbox does not prevent contract formation. A checkbox is one method of obtaining assent, but it is not the exclusive method. The dispositive question is whether the user received clear notice that clicking the operative button would constitute agreement and then clicked that button. *Id.*

## II. Vanguard's portal clearly informed Mr. Goldart that searching constituted agreement to the Terms of Service.

Vanguard's portal did not rely upon passive use of the website or upon terms hidden at the bottom of an unrelated page. Instead, it expressly identified the precise conduct that would constitute acceptance.

Immediately above the operative search button, the portal stated: "By searching, you agree to our Privacy Policy and Terms of Service." ECF No. 7-1 ¶ 16 & Ex. C.

That statement unambiguously identified both the conduct constituting assent—"searching"—and the contractual terms to which the user would agree—the hyperlinked "Terms of Service." The notice appeared directly above the search button and at the point at which the user decided whether to proceed. *Id.*

The portal's formulation is materially indistinguishable from, and in material respects more explicit than, the notice found sufficient in *Dhruva*. There, the website informed users that "[b]y subscribing" they agreed to the linked terms, and the users manifested assent by clicking a button

labeled "Sign up now." 131 F.4th at 148–49, 154–55. Here, Vanguard's portal stated directly that "[b]y searching, you agree" to the Terms of Service, and Mr. Goldart proceeded by using the search functionality.

The portal therefore provided the "clear and conspicuous notice that a click . . . will be taken as assent" required by Fourth Circuit law. *Id.* at 154. No additional checkbox was necessary.

**III. Mr. Goldart objectively manifested assent on three separate occasions.**

Vanguard's records show that Mr. Goldart used the portal to search for his notices on January 9, January 16, and March 20, 2025. ECF No. 7-1 ¶ 16 & Ex. B.

Each search required Mr. Goldart to proceed through the portal after the page expressly informed him that "[b]y searching," he agreed to the Terms of Service. *Id.* ¶ 16 & Ex. C. By performing the identified action after receiving that notice, Mr. Goldart objectively manifested assent to the Terms of Service.

It is immaterial that the operative button was associated with searching rather than labeled "I agree." *Dhruva* squarely rejects the proposition that the button itself must contain the words "agree" or "accept." 131 F.4th at 154–55. The contractual significance of the click was supplied by the notice immediately above the button, which expressly told the user that searching constituted agreement.

Nor does contract formation depend on whether Mr. Goldart recalls reading the notice or subjectively intended to accept every provision. Maryland's objective theory looks to the meaning reasonably conveyed by the parties' words and conduct. *Cochran*, 398 Md. at 16–17, 919 A.2d at 709–10. The portal stated that searching constituted agreement, and Mr. Goldart searched.

Mr. Goldart's repeated use of the portal provides still further confirmation of assent. This was not a single incidental or accidental visit. Vanguard's records reflect three separate portal

interactions on three different dates. ECF No. 7-1 ¶ 16 & Ex. B. Each completed search independently manifested agreement to the Terms of Service then presented to him.

**IV. Mr. Goldart's claims fall within the online arbitration provision.**

Mr. Goldart's sole claim arises from Vanguard's operation of the parking facility and administration of the very notices he accessed through the online portal. The Complaint challenges Vanguard's recording of his license plate, acquisition and use of vehicle-owner information, issuance and mailing of Parking Payment Notices, requests for payment, processing of payments, and related notice-administration activity. Compl. ¶¶ 17–25, 36–48.

Those allegations concern Vanguard's parking, monitoring, notice-administration, payment, and dispute-administration services. They also concern the same notices that Mr. Goldart accessed through the portal after agreeing to Vanguard's Terms of Service. The dispute therefore falls within the scope of the arbitration agreement contained in those Terms.

Any argument that Mr. Goldart used the portal merely to investigate, review, or address an existing notice does not alter the formation analysis. The portal expressly advised him of the contractual consequence of using the search functionality. After receiving that notice, he elected to proceed. Under Maryland's objective theory and *Dhruva*, that conduct manifested assent regardless of his subjective reason for conducting the search.

**V. The online agreement provides a third independent basis for compelling arbitration.**

Vanguard's original Motion establishes that Mr. Goldart agreed to arbitrate by entering and parking at the 6831 Wisconsin Avenue facility after receiving notice of the posted Parking Agreement. ECF No. 7 at 1–9. It further establishes that Mr. Goldart received four notices containing arbitration language and paid each notice by check. ECF No. 7-1 ¶¶ 12–15.

The portal activity supplies an additional and independently sufficient basis for the same relief. Mr. Goldart manifested assent to Vanguard's arbitration terms: by parking at the facility after notice of the posted Parking Agreement; by receiving and paying four Parking Payment Notices that incorporated the Parking Agreement and its arbitration provision; and by using Vanguard's online portal on three separate occasions after being expressly informed that searching constituted agreement to the Terms of Service.

The Court need not rely exclusively upon any one of these grounds. Each constitutes objective conduct manifesting assent to a written arbitration agreement covering the dispute asserted in this action.

**CONCLUSION**

For these reasons, and for the reasons stated in Defendant Vanguard Parking Solutions, Inc.'s Motion to Compel Arbitration and Stay Proceedings, ECF No. 7, the Court should compel Plaintiff Jed Goldart to arbitrate his claims against Vanguard on an individual basis and stay this action pending completion of arbitration.

Respectfully Submitted,

By: /s/Justin M. Daniel, Esquire, (#20187)
25 Hooks Lane, Suite 210
Baltimore, Maryland 21208
(410) 547-0480
jdaniel@davidefink.com
*Attorney for Defendant Vanguard Parking Solutions, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on July 20th, 2026, a copy of the foregoing was filed through the Court's CM/ECF system, which will send notice to all counsel of record.

/s/Justin M. Daniel