**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**–Southern Division–**

| | | |
|---|---|---|
| JED GOLDART, *et al.* | : | |
| Plaintiffs, | : | |
| v. | : | Case No. 8:26-cv-01739-JRR |
| VANGUARD PARKING SOLUTIONS, INC. | : | |
| Defendant. | : | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT VANGUARD PARKING SOLUTIONS, INC.'S MOTION TO COMPEL ARBITRATION**

Plaintiffs, through the undersigned, hereby oppose the Motion to Compel Arbitration (the "Motion," ECF No. 7) and Supplement (ECF No. 10) filed by Defendant Vanguard Parking Solutions, Inc. ("Vanguard"), and in support state as follows.

**INTRODUCTION**

Defendant Vanguard does not satisfy its burden of showing that an enforceable contract to arbitrate the claims raised in this matter exists between Named Plaintiff and Defendant Vanguard. Both of Defendant Vanguard's purported arbitration agreements fail for a variety of reasons. With regard to the posted sign, a consumer parking at a parking garage does not mean the consumer has agreed to an illegible arbitration provision in fine print on a single small sign almost perfectly placed to prevent a consumer from actually having the opportunity to review it among numerous other confusing signs. Moreover, the sign is invalid under the prospective waiver doctrine. With regard to the Defendant Vanguard's website, the arbitration agreement in the terms

and conditions of its website does not apply to the claims raised by Plaintiffs in this lawsuit.

Defendant Vanguard's sign at the parking garage at issue in this case falls far short of the conspicuous notice needed to form an arbitration agreement through conduct. The sign is only one among numerous other signs at the parking garage, would not be visible or legible to a driver entering the garage, is not located in an area where patrons would see the signage when walking out of the garage after parking, and is far too small in print to be considered clear.

As for Defendant Vanguard's arbitration provision in the terms and conditions of its website, the Court need not address the host of problematic issues raised by Defendant's argument that a business could violate someone's privacy rights and send them inflated violation charges telling them to go to a website to get more information and pay, and then force them into arbitration just by virtue of them using the business's website in order to investigate what is supposedly going on. The Court need not reach those issues because the actual scope of that arbitration agreement plainly only applies to disputes regarding the payment website itself and not the misconduct that brought the consumer to the website. Because Plaintiffs' claims do not relate to the functioning of the website at all, the arbitration agreement from Defendant's website does not apply.

Accordingly, Defendant Vanguard's Motion should be denied.

**STANDARD**

"[I]t is well-settled that a 'party cannot be required to submit to arbitration any dispute which he has not agreed to so submit.'" *Chorley Enters., Inc. v. Dickey's*

*Barbecue Restaurants, Inc.*, 807 F.3d 553, 563 (4th Cir. 2015) (*quoting Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011)). As the party seeking to compel arbitration, Defendant Vanguard "bears the burden of establishing the existence of a binding contract to arbitrate." *Marshall v. Georgetown Mem'l Hosp.*, 112 F.4th 211, 218 (4th Cir. 2024).

Judges in this District have recognized that "motions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 589 (D. Md. 2013) (*quoting Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 683 (D. Md. 2004)); *PC Constr. Co. v. City of Salisbury*, 871 F. Supp. 2d 475, 477 (D. Md. 2012). Treating a motion to compel arbitration as a motion for summary judgment is proper where "the formation or validity of the arbitration agreement is in dispute," *Caire*, 982 F. Supp. 2d at 589, or where documents outside the pleadings must be considered "to effectively assess the merits of [the] motion." *Shaffer*, 321 F. Supp. 2d 682, 683-84 (D. Md. 2004).

## FACTS

### <u>6831 Wisconsin</u>

The parking garage located at 6831 Wisconsin Ave., Chevy Chase, MD 20815 ("6831 Wisconsin") is a three-level parking structure located near several shops that holds itself as open to the public for parking. Affidavit of Named Plaintiff Jed Goldart, attached hereto as Exhibit 1, at ¶ 2. There is no rising arm gate to enter into 6831 Wisconsin or other barrier to enter the garage or attendant to talk to. *Id.* Instead, there are signs indicating that the premises is under video surveillance, that persons may park up to

two hours free of charge, and that and that parking beyond two hours will leave a visitor subject to towing. *Id.* There is additional signage, approximately two feet by three feet, containing fine print that a driver entering the garage would need to stop and exit their vehicle to read:



*Id.*, at ¶¶ 2-3. The top sign (the "Vanguard Sign") appears as follows:



*Id.*, at ¶ 4.

Other signage provides a parking rate of “free” for up to two hours and $10.50 “max” and provides QR codes to various apps to enter payment information. *Id.*, at ¶ 5. Those other signs do not reference the Vanguard Sign or Defendant Vanguard at all, any purported parking contract, or provide the amount or terms of any fees or fines for overstaying without paying, instead stating that unauthorized vehicles will be towed at the owner’s expense:







*Id.*

In sum, a consumer driving into 6831 Wisconsin would have to stop and exit their vehicle in order to approach and be able to read any of the terms on the Vanguard Sign, and otherwise would not be made aware in any way of any relationship whatsoever with

Defendant Vanguard or any terms to which the consumer would supposedly be agreeing by parking in the garage. *Id.*, at ¶ 7.

**Named Plaintiff**

On January 20, 2025, Named Plaintiff Jed Goldart entered 6831 Wisconsin at 5:06 p.m. and exited at 7:43 p.m. *Id.*, at ¶ 8. He never saw the Vanguard Sign at all, much less had the opportunity to read its terms. *Id.*, at ¶ 6. Defendant Vanguard, which was monitoring the license plate of his vehicle, took the position that he had violated the terms for parking at the garage, accessed his private personal information through the Maryland Motor Vehicle Administration and used that information to send him a "Parking Payment Notice." *Id.*, at ¶ 8.

The Parking Payment Notice alleged that Named Plaintiff owed $85.00, which would be reduced to $55.00 if paid within 15 days, and that the fine could increase to a maximum of $125 if not paid. *Id.* The Parking Payment Notices also stated: "To contact us regarding this Parking Charge, you must visit payparkingnotice.com or call (954) 228-3280." *Id.* After he received Parking Payment Notice, Named Plaintiff used payparkingnotice.com to view details regarding the alleged violation on at least one occasion.

**payparkingnotice.com**

In order to look up a particular charge on payparkingnotice.com, a consumer views a screen stating: "By searching, you agree to our Privacy Policy and Terms of Service." The Terms of Service in effect during the relevant timeframe, which were not attached to Defendant Vanguard's Motion or Supplement, are attached at pages 11-24 of

the Declaration of Mendy Goldman, attached hereto as Exhibit 2, and stated in relevant part:

> Please carefully read the following terms and conditions (the "Terms"). These Terms set forth a legally binding agreement between you and Vanguard Parking (and Vanguard Parking's corporate affiliates, parent corporation, subsidiaries, and divisions as may change from time to time). The Terms specifically govern your use of Vanguard Parking's website to pay Parking Charges (as such term is defined in the Parking Agreement referenced below) (the "Services").

*Id.*, at p. 11. The arbitration provisions state that arbitration applies to "disputes, claims or controversies" "regarding these Terms or the Services." *Id.*, at p. 20.

## ARGUMENT

A threshold question in every arbitration-related case is thus "whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019). As the party seeking to compel arbitration, Defendant Vanguard "bears the burden of establishing the existence of a binding contract to arbitrate." *Marshall*, 112 F.4th at 218 (quotation marks removed). Whether an agreement to arbitrate was formed is ... a question of ordinary state contract law principles." *Rowland v. Sandy Morris Fin. & Estate Planning Servs., LLC*, 993 F.3d 253, 258 (4th Cir. 2021). As the Fourth Circuit recently stated, "[p]ut simply, the existence of a contract is a precondition to enforcement of an arbitration clause." *Naimoli v. Pro-Football, Inc.*, 120 F.4th 380, 386–87 (4th Cir. 2024). Both of Defendant Vanguard's purported agreements to arbitrate fail the basic requirement of demonstrating an enforceable agreement to arbitrate the claims Plaintiffs bring in this lawsuit, and the Motion should be denied.

## I. The Vanguard Sign Posted On the Garage Is Insufficient to Form a Contract

"Whether an agreement to arbitrate was formed is a question of ordinary state contract law principles." *Marshall*, 112 F.4th at 218 (cleaned up). Under Maryland law, a prerequisite to the formation of a contract is mutual assent between the parties. *See Cochran v. Norkunas*, 398 Md. 1, 919 A.2d 700, 708 (2007). As this Court has previously stated, "mutual assent requires at the outset that each party knows of and manifests an intent to be bound by the contract terms." *Watkins v. Carr*, Civ. No. PX-17-0819, 2018 WL 10741730, at *2 (D. Md. Jan. 12, 2018) (citing *Galloway*, 819 F.3d at 85). "The party seeking to enforce the contract must produce evidence demonstrating mutual assent." *Id.* As the Fourth Circuit has stated of Maryland law, "[t]he person asserting the contract's existence must demonstrate that the person alleged to be bound by the contract (1) had reasonable notice of an offer to enter into the contract and (2) manifested assent to it." *Naimoli v. Pro-Football, Inc.*, 120 F.4th 380, 389 (4th Cir. 2024). *See also Grosvenor v. Qwest Corp.*, 854 F. Supp. 2d 1021, 1026 (D. Colo. 2012) ("[w]hen a party is unaware of a term of a contract because it was hidden or obscured, there can be no presumption that there was a meeting of the minds as to such term"); *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 993, 101 Cal. Rptr. 347, 351 (Cal. App. 1972) ("an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he is unaware, contained in a document whose contractual nature is not obvious").

In this case, Defendant Vanguard does not satisfy its burden to show that Named Plaintiff assented to the terms of the Vanguard Sign, because the inconspicuous

placement, illegibility to drivers and multiple competing signs making no reference to the Vanguard Sign do not provide reasonable notice to a driver of the terms of the Vanguard Sign. The print on the sign is not visible from a vehicle, so a driver would have to either obstruct traffic and exit their vehicle, or know to walk back after parking to see that particular sign among all of the other signs in the garage, to even have the opportunity to review the terms of the Vanguard Sign. The Vanguard Sign is one among numerous other signs at the parking garages and is not located in the areas where patrons exit the parking structure after parking. None of the numerous additional signs in the garage reference the Vanguard Sign or Defendant Vanguard, and because a patron would not have the opportunity to review the Vanguard Sign, the patron would have no reason to know that the Vanguard Sign contained information different than the numerous other signs inside the garage, even if the patron happened to see that there was an additional sign as the patron entered the garage.

The case relied upon by Defendant Vanguard, *Brant* (attached hereto as Exhibit 3 for the Court's convenience), involved signs that "were clearly posted, were numerous and obvious, and set forth the arbitration clause in no uncertain terms." April 14, 2026 Opinion in *Brant v. Parking Revenue Recovery Services, Inc.*, Case No. 25-cv-01771-GPG-NRN in the US District Court for the District of Colorado, ECF No. 36, at p. 21. In contrast, the Vanguard Sign was not clear, was not numerous, and was not obvious. The Vanguard Sign is posted in a position that is not legible to drivers, is not numerous at all (the only sign was posted in an area where a driver would never be able to safely review), and was not obvious because there were numerous additional signs that did not mention

anything else about Defendant Vanguard or the Vanguard Sign. Defendant Vanguard would have a better position if the only sign in the parking garage was the Vanguard Sign, but there are numerous other signs within the garage setting forth the terms for parking, none of which reference the Vanguard Sign or Defendant Vanguard. A reasonable person would have no reason to know that the Vanguard Sign contained additional provisions not reflected on those other signs, defeating Defendant Vanguard's argument that Plaintiffs can be bound by the Vanguard Sign because they should have known that they were agreeing to *something* just by parking in the garage.

Moreover, the Fourth Circuit has specifically rejected the reasoning urged by Defendant Vanguard in this case – that because circumstances would indicate to a reasonable patron that they were agreeing to *something* means that the patron is agreeing to *everything* that could have been discovered through enough digging. In *Marshall*, 112 F.4th at 220, the Fourth Circuit ruled that a webpage that prominently stated "ARBITRATION NOTICE: THIS APPLICATION AND APPLICATION PROCESS IS SUBJECT TO ARBITRATION PURSUANT TO THE SOUTH CAROLINA UNIFORM ARBITRATION ACT…" did not put a user on notice of the specifics of an arbitration provision that was much further down the webpage, where a user could submit an application through the webpage without scrolling down to that section of the page. The Court reasoned:

> the duty-to-read rule has always excepted cases in which 'the writing does not appear to be a contract and the terms are not called to the attention of the recipient.' Transposed to the internet context, 'the duty to read does not morph into a duty to ferret out contract provisions when they are contained in inconspicuous hyperlinks,' or can be found only by scrolling down through additional screens.

*Id.* (*quoting Starke v. SquareTrade, Inc.*, 913 F.3d 279, 289 (2d Cir. 2019); *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 32 (2d Cir. 2002)). Similarly, just because a patron parking at a garage should know that there is some type of contractual relationship being formed does not require the patron to carefully search the property for obscured signs in order to understand all of the terms they could be agreeing to by parking at the garage.

Accordingly, because the Vanguard Sign does not provide reasonable notice to patrons of the existence of the arbitration provisions because it is not prominently located in a place that patrons can actually review and understand is being agreed to, Defendant Vanguard's argument for arbitration based on that sign fails.

## II. AS A MATTER OF LAW, THE VANGUARD SIGN IS UNENFORCEABLE UNDER THE PROSPECTIVE WAIVER DOCTRINE

In addition to the contract formation issues discussed above, arbitration cannot be compelled against Named Plaintiff under the Vanguard Sign due to the operation of the "prospective waiver doctrine." *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985).

Under this "generally applicable" contract defense, any agreement which "prospectively waives 'a party's right to pursue statutory remedies' is unenforceable as a violation of public policy." *Hengle v. Treppa*, 19 F.4th 324, 334-35 (4th Cir. 2021) (*quoting Mitsubishi Motors Corp.*, 473 U.S. at 637 n.19); *see also Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235-36 (2013); *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 273-74 (2009).

Here, the arbitration "agreement" at issue explicitly and prospectively waives Plaintiffs' right to pursue federal statutory claims against Defendant Vanguard. The Vanguard Sign provides in relevant part: "YOU AGREE THAT YOU WAIVE ANY CLAIM YOU MIGHT OTHERWISE HAVE AGAINST VANGUARD OR THE OWNER OF THE FACILITY IN CONNECTION WITH THE ACQUISITION AND USE OF SUCH PERSONAL INFORMATION, INCLUDING WITHOUT LIMITATION CLAIMS UNDER THE DPPA AND ANY APPLICABLE STATE LAW." ECF No. 15-1, at p. 7.

Defendant Vanguard's specific reservation of a prospective waiver of federal statutory claims against it means that no enforceable arbitration agreement exists between Named Plaintiff and Defendant Vanguard:

> courts will invalidate *any contract—arbitration or otherwise*—that attempts to foreclose 'the assertion of certain statutory rights' because such a contract would jeopardize a party's 'right to pursue statutory remedies[.]'

*Williams v. Martorello*, 59 F.4th 68, 80 (4th Cir. 2023) (emphasis in *Williams*, citations omitted). Here, the plain text of the Vanguard Sign, which literally "waive[s]… claims under the DPPA," at the very least "jeopardizes" Named Plaintiff's "right to pursue statutory remedies." *Id*.

The Vanguard Sign does not contain a severability provision. ECF No. 15-1, at p. 7. The Fourth Circuit has held that that even when there was a severability provision, a prospective waiver clause is non-severable, because it has the "forbidden purpose" of contravening public policy:

> the arbitration provision communicates an intent to require arbitration of all disputes, including those arising under federal law, while depriving borrowers of any remedy under federal law. That forbidden purpose to squelch federal claims in contravention of public policy goes to the core of the agreement to arbitrate.

*Hengle*, 19 F.4th at 344 (declining to sever prospective waiver clause). Here, just as in *Hengle*, the alleged contract "communicates an intent to require arbitration of all disputes, including those arising under federal law," while at the same time depriving Plaintiff of "any remedy" under *any* law, federal or state, statutory or otherwise. *Id*.

Defendant Vanguard's reservation of a prospective waiver of all claims against it means that its Motion under the same "agreement" must be denied pursuant to the prospective waiver doctrine.

## III. THE WEBSITE ARBITRATION PROVISION ONLY APPLIES TO DISPUTES REGARDING THE FUNCTIONING OF THE WEBSITE.

Regarding Defendant Vanguard's second alleged arbitration agreement, while there are numerous other potential issues with Defendant Vanguard's attempt to bind Plaintiffs to an arbitration provision on its website, the most pressing issue is that the actual terms of the arbitration provision do not encompass the claims made by Plaintiffs in this case. As the Supreme Court has stated, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (emphasis in original).

"The fundamental rule in the construction and interpretation of contracts is that the intention of the parties as expressed in the language of the contract controls the analysis." *Curtis G. Testerman Co. v. Buck*, 340 Md. 569, 580, 667 A.2d 649, 654 (1995).

"In construing contracts, Maryland follows the objective interpretation principle. If the language of the contract is unambiguous, we give effect to its plain meaning and do not delve into what the parties may have subjectively intended." *Rourke v. Amchem Prods., Inc.*, 384 Md. 329, 354, 863 A.2d 926, 941 (2004).

The unambiguous language of the Terms of Service in place during the relevant time applies the arbitration agreement only to "disputes, claims or controversies" "regarding these Terms or the Services." Exhibit 2, at p. 24. "Terms" is defined as the "terms and conditions" itself. *Id.*, at p. 11. "Services" is defined as "your use of Vanguard Parking's website to pay Parking Charges (as such term is defined in the Parking Agreement referenced below)." *Id.* Plaintiffs' claims against Defendant Vanguard are not "regarding" either the "Terms" or the "Services." As Defendant Vanguard itself admits, "The Complaint challenges Vanguard's alleged video monitoring, license-plate capture, MVA lookup, mailing of Parking Payments Notices, assessment of parking charges, and collection of payments." Motion, ECF No. 7, at p. 8. None of those claims are "regarding" the terms and conditions of Defendant Vanguard's website or the use of the website to make payments. Indeed, the website is not mentioned in the Complaint at all. Accordingly, the website arbitration agreement simply does not apply to the claims made by Plaintiffs in this case.

Thus, the Court need not reach issues such as the browsewrap nature of the website, which does not require the user to click a box to manifest consent. *See, e.g., Watkins v. Carr*, No. CV PX-17-0819, 2018 WL 10741730, at *3 (D. Md. Jan. 12, 2018); *Naimoli*, 120 F.4th at 389 ("the duty to read does not morph into a duty to ferret out

contract provisions when they are contained in inconspicuous hyperlinks, or can be found only by scrolling down through additional screens") (*quoting Marshall*, 112 F.4th at 220) (cleaned up).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Motion be denied.

Date: August 10, 2026

Respectfully submitted,

/s/ Joseph Mack________________
Joseph Mack
(D. Md. Bar No. 29021)
The Law Offices of Joseph S. Mack
PO Box 65066
Baltimore, MD 21209
Tel. (443) 423-0464
joseph@macklawonline.com

***Attorney for Named Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served on all parties via the Court's Electronic Court Filing system this 10th day of August, 2026.

/s/Joseph Mack__________
Joseph Mack