# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge Gordon P. Gallagher

Civil Action No. 1:25-cv-01771-GPG-NRN

BRIAN BRANT,
BROOKE FITZ,
ROBERT CALDWELL, and
MAYENSSI MONTIEL, individually, and on behalf of all others similarly situated,

Plaintiffs,

v.

PARKING REVENUE RECOVERY SERVICES, INC.,

Defendants.

---

**ORDER**

---

Before the Court is Defendant Parking Revenue Recovery Services, Inc.'s Motion to Compel Arbitration (Motion to Compel) (D. 28). For the reasons set forth below, the Court GRANTS the Motion to Compel.

## I. FACTS

Plaintiff Brant parked at a parking garage managed by Defendant Parking Revenue Recovery Services, Inc. (PRRS) at 1401 Market Street (Market lot) in Denver on May 28, 2025.[1] Plaintiff Fritz parked at the 1401 Market Street PRRS-managed garage on February 16, 2023, and the 1385 Larimer Street (Larimer lot) PRRS-managed garage on May 14, 2025. Plaintiff Caldwell

[1] The Court draws the operative facts as set forth in Plaintiff's (sic) Amended Class Action Complaint (Complaint) (D. 19) unless otherwise indicated.

parked at the PRRS-managed parking garage at 3350 Brighton Boulevard (Brighton lot) in Denver on May 21, 2025. Plaintiff Montiel parked at the PRRS-managed parking garage at 400 E. 3rd Street (3rd St. lot) in Little Rock on April 27, 2025.

**The Market lot (February 16, 2023[2] and May 28, 2025):**

Todd Tucker, Chief Operating Officer (COO) of PRRS, submitted an affidavit detailing the signage for the 3rd St. lot (D. 28-1) as well as providing pictures of what and where signs were posted for each of the applicable dates.

*February 16, 2023:*

The following signs were at the entrance, exit, and pay station:




[2] Information provided by the Parties indicates there may have been some difference in posted signage at the various lots depending on the alleged dates. I thus discuss the signage in relation to specific dates.


NATIONWIDE
PAY HERE
PAY FAST
1401
25023
NO FREE PARKING ANY TIME
PARKING ENFORCEMENT
ARBITRATION
P


NO FREE PARKING ANY TIME
PARKING ENFORCEMENT
ARBITRATION

(D. 28-5 at 2-5).

*May 28, 2025:*


PAY HERE
PAY HERE
STOP


FACILITY USE CONTRACT
NO FREE PARKING AT ANY TIME
PARKING COMPLIANCE
ARBITRATION
DISPUTE PROCESS
DATA PRIVACY


CASH IS
NEVER
ACCEPTED
STOP
PAY HERE




FACILITY USE CONTRACT
CASH IS
NEVER
ACCEPTED
STOP
PLEASE USE
QR CODE
TO PAY





(D. 28-7 at 2-8).

Plaintiff Brant faults the location, lighting, and numerosity of the signs and claims he did not see the signs (D. 34-4).

**The Larimer lot (May 14, 2025):**

The following signs[3] were posted at the entrance and exit:

[3] The sign was the same as that shown in other exhibits (*see* D. 28-2 at 2).


PARK
PUBLIC PARKING
P
ONLY
PAY HERE
KNOW YOUR LICENSE PLATE NUMBER


PARK
PUBLIC PARKING
P
ONLY
PAY HERE


PARK


PUBLIC
PARKING





(D. 28-6 at 2-6).

**The Brighton lot (May 21, 2025):**

The following are from the Brighton lot:










(D. 28-8 at 2-4,6).

Plaintiff Caldwell faults the location, numerosity, size, and lack of gates and claims not to have seen the signs (D. 34-5).

**The 3rd St. lot (April 27, 2025):**

The following sign was posted at the entrance:



(D. 28-3 at 2).

This is what the sign said:




(D. 28-2 at 2).

Here are additional images of the front and back gates for the lot:






(D. 28-4 at 2-3).

While not disputing the location of the entrance sign, Plaintiff Montiel faults the sign as facing the side of the vehicle, being posted well off the ground, and asserts that there was not a stop sign or speed bump that would have slowed him to see the sign (D. 34-1 at 1-3). Montiel claims not to have seen the sign (*id.* at 3).

## II. LEGAL STANDARD

The Federal Arbitration Act (FAA) governs arbitrability questions. *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1279 (10th Cir. 2017). The FAA provides that a written arbitration agreement "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. The FAA expressly permits a party to petition a federal district court to compel arbitration. Section 4 of the FAA authorizes "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court ... for an order directing that such arbitration proceed . . . ." 9 U.S.C. § 4. "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

"[T]he existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked" and the party attempting to compel arbitration bears the burden of "demonstrating a valid arbitration agreement" exists. *Fundamental Admin. Servs., LLC v. Patton*, 504 F. App'x 694, 698 (10th Cir. 2012) (citations omitted). To determine whether there is a valid arbitration agreement, courts employ a two-step process. The first step requires a court to determine whether there is an agreement that provides the moving party the right to compel arbitration. *Cavlovic v. J.C. Penney Corp., Inc.*, 884 F.3d 1051, 1057 (10th Cir. 2018). If the movant satisfies the first step, the second step requires a court to determine whether the allegations in the complaint are within the scope of the arbitration provision. *Id.* In deciding a motion to compel arbitration, the Court applies a framework similar to that it would apply on a motion for summary judgment—a motion to compel arbitration should only be granted "if there are no genuine issues of material fact regarding the parties' agreement" to arbitrate and the Court must "give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012) (quotations omitted).

There are exceptions to the requirement to order arbitration even where an otherwise enforceable arbitration agreement exists. Relevant here, § 1 of the FAA denotes that "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" are exempt from FAA coverage. 9 U.S.C. § 1. The party opposing arbitration bears the burden of demonstrating that they fall within an exemption under the FAA. *See Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 227 (1987) (citation omitted). Thus, "a court should decide for itself whether § 1's 'contracts of employment' exclusion applies before ordering arbitration." *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 537 (2019).

Although the FAA specifies the procedures for enforcing an arbitration agreement, "[a] federal court must apply state contract law principles when determining whether an arbitration agreement is valid and enforceable." *Nesbitt v. FCNH, Inc.*, 74 F. Supp. 3d 1366, 1371 (D. Colo. 2014). Similarly, "[t]he scope of an arbitration agreement . . . is a question of state contract law." *Reeves v. Enter. Prod. Partners, LP*, 17 F.4th 1008, 1011 (10th Cir. 2021).

## III. ANALYSIS

Two other courts within this District have recently addressed the same issue, in the same posture (a motion to compel arbitration), with at least one of the same parties (PRRS): *Butler v. Asura Technologies USA, Inc. and Parking Revenue Recovery Services Inc.*, 24-cv-00529-DDD-STV, ECF No. 33 (D. Colo. Oct. 7, 2024), and *Crostarosa v. LAZ Parking LTD, Asura Technologies USA, Inc. and Parking Revenue Recovery Services Inc.*, No. 25-cv-00211-NYW-KAS, 2026 WL 183469 (D. Colo. Jan. 23, 2026). There is no daylight between those cases and the dispute before this Court.

In response to the motion to compel, Plaintiffs argue that (1) the parties did not form a contract because there was no mutual agreement and (2) if there was an agreement made it was unconscionable and unenforceable (D. 34).

Chief Judge Daniel D. Domenico fully addressed both of these arguments in *Butler* as follows:

> **DISCUSSION**
>
> The arbitration clause at issue here, posted on large red signs at the entrance to the relevant lots, states that "[b]y parking on this Facility, you hereby agree that the sole remedy for all unresolved disputes is binding arbitration." *See, e.g.*, Doc. 10-2. The dispute in this case, which pertains to the Plaintiffs' use of the lots monitored by Defendants, is clearly within the scope of this statement. *See Burlington N. & Santa Fe Ry. Co. v. Pub. Serv. Co. of Oklahoma*, 636 F.3d 562, 570 (10th Cir. 2010)

("If the allegations underlying the claims touch matters covered by the parties' arbitration agreement, then those claims must be arbitrated, whatever the legal labels attached to them.") (internal citations omitted).

**I. Agreement to arbitrate**

"Although the Supreme Court has long recognized and enforced a liberal federal policy favoring arbitration agreements. . . whether parties have a valid arbitration agreement at all is a gateway matter that is presumptively for courts to decide." *Bellman v. i3Carbon*, 563 F.App'x 608, 611 (10th Cir. 2014) (cleaned up). Whether a valid arbitration agreement exists in turn depends on "ordinary state-law principles that govern the formation of contracts." *Walker v. BuildDirect.com Techs., Inc.*, 733 F.3d 1001, 1004 (10th Cir. 2013) (internal citation omitted).

"Under Colorado law, the existence of a contract is generally a question of fact to be determined by consideration of all facts and circumstances." *Condor Energy Tech., LLC v. Baker Hughes Oilfield Operations, Inc.*, No. 16-cv-1912-WJM-CBS, 2016 WL 11744214, at *5 (D. Colo. Nov. 29, 2016) (collecting cases). In determining whether a contract exists, "evidence of the parties' conduct, their oral statements and their writings, and other evidence illuminating the circumstances surrounding the making of an agreement are admissible to clarify the intent and purpose of the parties." *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 888 (Colo. 1986). "An offer and assent may be manifested by acts or conduct creating a contract." *Leica Geosystems, Inc. v. L.W.S. Leasing, Inc.*, 872 F. Supp. 2d 1191, 1198 (D. Colo. 2012) (internal citations omitted).

At first blush, it may seem counterintuitive or surprising that one can be bound to the terms of a contract by parking in a parking lot. But a bit of consideration reveals that such contracts are, in fact, not unusual at all. The fundamental exchange of promises at the heart of any implied parking contract is fairly obvious: you allow me to park my car on your property, and I agree to pay you for this privilege, or else risk towing or ticketing. This exchange, on its own, is sufficient to meet the basic criteria necessary to establish formation of a contract. *Lucht's Concrete Pumping, Inc. v. Horner*, 255 P.3d 1058, 1061 (Colo. 2011) ("This court has long held that any benefit to a promisor or detriment to a promisee at the time of the contract—no matter how slight—constitutes adequate consideration.") (internal citations omitted).

It's also clear that the operator of the parking lot can modify or add to these basic terms by, for example, posting signs that limit their liability in the case of damage to a vehicle, or add rules about sleeping in vehicles overnight. All of these understandings are based on and consistent with the fact that there is a contract between the user and the owner of the parking lot. The question in this case is therefore not whether a contract existed between Plaintiffs and Defendants—it

certainly did—but whether that contract included the arbitration clause at issue here.

I conclude that it did include the arbitration clause. The undisputed facts here demonstrate that large red signs at the entrance to the parking lots put Plaintiffs on notice that something important was being conveyed to them. Such information, as explained above, frequently involves contractual limits and requirements. Whether or not they chose to read those signs is irrelevant, as they agreed to any terms posted on them when they decided to park their cars in the lots monitored by Defendants. *See, e.g., Condor Energy Tech*., LLC, 2016 WL 11744214, at *5 (assent can be manifested by acts or conduct). If it was important to them to know exactly the terms of the contract they were entering into by parking in these lots, they had the opportunity to review those terms. *Spain v. Johnson*, 711 F.Supp.3d 1260, 1265 (D. Colo. 2024) ("Whether Ms. Spain actually read the provisions or, like most of us, just scrolled through and clicked the box, is unnecessary to know."). As the exhibits to Defendants' Motion to Compel Arbitration show, the red signs were posted conspicuously throughout the lots where Plaintiffs parked. *See* Docs. 10-2, 10-3. These signs explained, under a capitalized, boldfaced "ARBITRATION" heading set against a contrasting background, that "[b]y parking on this Facility, you hereby agree that the sole remedy for all unresolved disputes is binding arbitration, and specifically waive the right to jury trial, class action and/or class arbitration." *Id*.

That "[n]o gate or speed bump causes patrons to slow down their vehicles to afford them an opportunity view the Red Signs," as Plaintiffs stress, is of no moment. Doc. 23 at 6. A contract was formed between the parties when Plaintiffs manifested assent to the implied terms of the agreement: temporary use of a parking spot in exchange for a promise to pay if necessary. *See* Doc. 23-2; *E-21 Eng'g, Inc. v. Steve Stock & Assocs., Inc*., 252 P.3d 36, 39 (Colo. App. 2010) ("Common law contract principles allow for the formation of contracts without the signatures of the parties bound by them.") (internal citation omitted). A reasonable person in Plaintiffs' position would have understood the basic nature of this exchange as well as the fact that it constituted a binding agreement, breach of which would have resulted in additional fees or penalties. If Plaintiffs had wanted to learn what other terms governed this parking agreement, it would have been easy for them to review the conspicuous red signs, which clearly state that "[t]his is a Contract," that customers should "[r]ead these terms PRIOR to parking," and that arbitration is the "sole remedy for all unresolved disputes." Doc. 10-3. The fact that they did not or were uninterested in doing so is legally insignificant and does not change the binding effect of the arbitration clause. *See Weller v. HSBC Mortg. Servs., Inc.*, 971 F.Supp.2d 1072, 1080 (D. Colo. 2013) ("A party generally cannot avoid contractual obligations by claiming that he or she did not read the agreement.") (internal citations omitted).

The contract in this case is not unlike the online "clickwrap" contracts that have been repeatedly upheld in this district and throughout the nation. *See, e.g.*, *Spain*, 711 F.Supp.3d at 1265. In "clickwrap" contracts, users often manifest assent to and are bound by terms and conditions that they never read. Though these terms and conditions are typically available via a hyperlink to another page, users usually skip past them in order to save time. Courts have found that this fact does not affect whether a valid contract exists between the parties. *See, e.g., Nardo v. HomeAdvisor, Inc.*, No. 21-cv-01709-RLM-KLM, 2022 WL 17547940, at *5 (D. Colo. Jul. 27, 2022) (finding a plaintiff was bound by an arbitration agreement "even though [he] never actually clicked the hyperlink to view HomeAdvisor's Terms and Conditions."). As with these "clickwrap" contracts, it is perhaps understandable or even expected that Plaintiffs did not read every word of every sign of the lots in which they parked. That does not change the fact, however, that they are now bound by the arbitration clause to which they assented. *See Lasser v. Charter Commc'ns, Inc.*, No. 19-cv-02045-RM-MEH, 2020 WL 1527333, at *3 (D. Colo. Mar. 31, 2020) (finding plaintiff bound by an agreement he "had the resources to access — and open, read, and understand" even though he did not do so).

Plaintiffs argue, in the alternative, that the arbitration clause should not be enforced because it lacks "any of the essential terms of arbitration, such as the scope, rules, or effect of any ruling." Doc 23 at 6. This is not so. The Supreme Court of Colorado has long upheld arbitration clauses which say nothing more than that disputes "shall be submitted to binding arbitration." *Guthrie v. Barda*, 533 P.2d 487, 487 (Colo. 1975); *see also Ragab v. Howard,* 841 F.3d 1134, 1139 (10th Cir. 2016) (Gorsuch, J., dissenting) ("Colorado's preference for arbitration has led it to enforce even arbitration clauses that say no more than that disputes 'shall be submitted to binding arbitration' without any discussion of procedural details.") (emphasis in original; internal citations omitted). Plaintiffs cite *Vescent v. Prosun Intern., LLC* to support their argument that the arbitration clause here is insufficient, but the facts of that case differ significantly from those of this one. No. 10-cv-01103-WYD-CVS, 2010 WL 4658862, at *2-3 (D. Colo. Nov. 9, 2010). There, the purported arbitration clause was not even a complete sentence and did not specify which claims, if any, were subject to arbitration. *Id*. Here, to the contrary, the arbitration clause states that all unresolved disputes will be subject to binding arbitration, a formulation which has been held to be sufficient by the Supreme Court of Colorado. I thus conclude that it is effective under the law.

**II. Enforceability**

It is of course true that not everything the operator of a parking lot might try to sneak onto a sign is binding on those who park there. Provisions that are so unusual or unfair that no reasonable customer would have reason to agree to them will not be enforced. *See, e.g., M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)

> (holding that forum selection clause was enforceable unless enforcement "would be unreasonable and unjust."). So, for example, while a provision imposing a towing fee for cars parked beyond their time limit would be enforceable, one purporting to require forfeiture of the vehicle likely would not. The question is whether the provision here is of the latter type. I conclude that it is not.
>
> Given the "liberal federal policy favoring arbitration agreements," arbitration clauses are generally enforced. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). There are, however, exceptions to this rule, such as where enforcement of an arbitration clause would be unconscionable. *See, e.g., Weller v. HSBC Mortg. Servs., Inc.*, 971 F.Supp.2d 1072, 1079-80 (D. Colo. 2023). Under Colorado law, courts consider the following factors when determining whether a contractual provision is unconscionable: (1) whether the contract is a standardized agreement executed by parties with unequal bargaining power; (2) whether a party lacked the opportunity to read or become familiar with the document before signing it; (3) whether the relevant provision is written in fine print; (4) whether or not there is evidence that the provision is commercially reasonable; (5) the terms of the contract; (6) the relationship between the parties, including factors of assent, unfair surprise, and notice; and (7) the other circumstances surrounding the formation of the contract. *Weller*, 971 F.Supp.2d at 1079-80.
>
> While the first factor may point towards unconscionability, "the times in which consumer contracts were anything other than adhesive are long past." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346-47 (2011). The other relevant factors point away from unconscionability. Importantly, Plaintiffs had the opportunity to review the arbitration terms before parking their cars, the arbitration provision was written in large font and set against a contrasting red background, and there is nothing commercially unreasonable about the use of arbitration in this situation. *See, e.g., Spain*, 2024 WL 907435, at *3-4 ("[A]rbitration of disputes is generally not unconscionable, and in fact is encouraged by Congress."). Plaintiffs may prefer to bring their case in court, but that does not mean that this arbitration clause is unconscionable. *See Id*. at *4.

(*Butler,* D. 33 at 3-9).

This Court, in conducting and stating its analysis, is often reluctant to lean so heavily on the work of fellow judges and understands that their findings and analysis, however persuasive, are not binding on this Court. However, this Court is also cognizant of the limited time available to courts and the inefficiency of repeatedly addressing the same issue. And here, both the issues

and evidence are essentially identical. This issue does not merit a wholesale revisiting for a third time in less than six months.

This Court, consistent with Chief Judge Domenico, finds that there was a valid contract. The signs shown above were clearly posted, were numerous and obvious, and set forth the arbitration clause in no uncertain terms. This is not a game of whack-a-mole. The owners/managers of the lot are not obliged to address every argument that a member of the public who wishes to avoid arbitration might invent, e.g., putting in a gate, a stop sign, a click-thru at the payment stand. Clearly posting signs is enough. Drivers in the United States are well aware, be it on a public street or in a parking lot, that they have to ascertain the rules before locking their car and walking away. They do not have to like the rules, but they do have to follow them. Juxtaposing paid parking on a street with a parking lot, street parking is far more uncertain that the lots discussed in this order. Frequently there are limited signs and less lighting—yet drivers know they have to figure out the rules or pay the consequences. There was no lack of notice with regard to any of the parking lots in this case. Each of the Plaintiffs entered into a valid contract and arbitration agreement when they parked in the lots. This Court wholly adopts Chief Judge Domenico's analysis on that issue.

Plaintiffs' entirely unsupported assertions that the arbitration agreement was unconscionable are no more availing. Put simply, if Plaintiffs did not wish to agree to the terms, they could have parked somewhere else. I adopt Chief Judge Domenico's analysis in this regard as well.

## IV. CONCLUSION

Accordingly, it is ORDERED that Defendant's Motion to Compel Arbitration (D. 28) is GRANTED.

It is further ORDERED that this matter is STAYED and ADMINISTRATIVELY CLOSED pending the conclusion of arbitration.

It is further ORDERED that the Parties SHALL jointly update this Court within seven (7) days of the conclusion of arbitration.

DATED April 14, 2026.

BY THE COURT:

Gordon P. Gallagher
United States District Judge