**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**–Southern Division–**

| | |
|---|---|
| JED GOLDART, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>VANGUARD PARKING SOLUTIONS, INC.<br><br>Defendant. | Case No. 8:26-cv-01739-JRR |

**PLAINTIFFS' SURREPLY TO DEFENDANT VANGUARD PARKING SOLUTIONS, INC.'S REPLY MEMORANDUM REGARDING ITS MOTION TO COMPEL ARBITRATION**

Named Plaintiff, through his undersigned counsel, hereby file this Surreply to the Reply Memorandum (the "Reply," ECF No. 14) filed by Defendant Vanguard Parking Solutions, Inc. ("Vanguard") in support of its Motion to Compel Arbitration (the "Motion," ECF No. 7) and Supplement (ECF No. 10).

## INTRODUCTION

In its Reply, Defendant Vanguard presents a new argument that the terms and conditions of its website state that Plaintiffs agreed to and ratified whatever agreements Plaintiffs had already agreed to by entering into a facility operated by Defendant Vanguard. Defendant Vanguard argues that Named Plaintiff accordingly agreed to the arbitration provisions in the signs at the parking garage in question, whether or not Named Plaintiff had a fair opportunity to see and review those signs when parking. However, Defendant Vanguard does not acknowledge, or attempt to discuss the

implications of, the fact that the terms of the parking facility agreement is not actually included in, or even hyperlinked in, the terms and conditions of the website. Thus, once again, Defendant Vanguard is demonstrating its total disregard for the requirement that a consumer be given fair notice and manifest mutual assent before being deprived of their ability to vindicate their rights in court.

## PROCEDURAL BACKGROUND

In is Motion and Supplement, Defendant Vanguard advanced two separate arguments for arbitration in this case. The first was based on signs posted at the parking garages where Named Plaintiffs parked that contained arbitration provisions. The second (first advanced in its Supplement), was that by using Defendant Vanguard's website, Named Plaintiff had agreed to the terms and conditions of the website (the "Terms of Service"), and that "[t]he Terms of Service in effect on the dates of the subject dispute contained an arbitration provision requiring binding arbitration of disputes, claims, or controversies between the user and Vanguard regarding the Terms or Vanguard's services." ECF No. 10, at pp. 6-7.

In the Opposition to Defendant Vanguard's Motion to Compel Arbitration, Named Plaintiff pointed out that that the website Terms of Service define "Services" narrowly, as the use of the website to pay parking charges, so the arbitration provision in the Terms of Service do not apply to the Named Plaintiff's claims in this case. ECF No. 13, at pp. 14-16.

In its Reply, Defendant Vanguard first raises a new argument, claiming that the Terms of Service of the website contain language "ratifying" the terms on the signs at the parking garage. ECF No. 14, at p. 12.

**ARGUMENT**

Named Plaintiff limits this Surreply to the new argument raised in Defendant Vanguard's Reply that the Terms of Service in Defendant Vanguard's website contain language ratifying the arbitration agreements contained on the Vanguard Sign.[1] Defendant Vanguard's Reply does not mention or grapple with the fact that text of the Vanguard Sign is not hyperlinked or otherwise made available to a user of the website, even one inclined to carefully peruse the website's Terms of Service. Thus, it would not be ascertainable to a user what, if anything, the user was supposedly agreeing to by using the website.

Yet again, Defendant Vanguard's argument in its Reply regarding its website Terms of Service depends on overstating what is actually in the Terms of Service. The use of the term "Parking Agreement" as a defined term first appears as follows:

> Acceptance of these Terms represents the formation of a separate agreement between you and Vanguard Parking and does not replace or amend any prior obligation or contract you may have entered into with Vanguard Parking, including the Parking Agreement that you entered into by entering a parking facility owned by and/or operated by Vanguard Parking (the "Parking Agreement"), which is a valid and enforceable agreement between you and Vanguard Parking.
>
> BY AGREEING TO THESE TERMS, YOU HEREBY PROVIDE VANGUARD PARKING WITH YOUR EXPRESS CONSENT TO OBTAIN YOUR NAME AND MAILING ADDRESS FROM THE

[1] The "Vanguard Sign" is the sign at the 6831 Wisconsin St. parking garage that is reproduced in the Complaint.

> STATE DEPARTMENT OF MOTOR VEHICLES PURSUANT TO 18 U.S.C. § 2721. YOU FURTHER ACKNOWLEDGE THAT BY AGREEING TO THESE TERMS THAT YOU REAFFIRM AND RATIFY YOUR AGREEMENT TO THE PARKING AGREEMENT POSTED AT VANGUARD PARKING'S PARKING FACILITIES (AS SUCH TERM IS DEFINED IN THE PARKING AGREEMENT), WHICH IS FULLY AND SPECIFICALLY INCORPORATED HEREIN, INCLUDING, BUT NOT LIMITED TO, THE BINDING ARBITRATION CLAUSE.

ECF No. 13-2, at p. 12. Thus, "Parking Agreement" includes "any prior obligation or contract you may have entered into with Vanguard Parking, including the Parking Agreement that you entered into by entering a parking facility owned by and/or operated by Vanguard Parking." Despite purporting to "specifically incorporate" whatever "Parking Agreement" Named Plaintiff agreed to by parking at 6831 Wisconsin, the Parking Agreement is not actually hyperlinked or otherwise made available to a user of the website. *See* ECF No. 13-2, at pp. 12-25.

Thus, in order to understand what he was purporting to agree to by using the website to investigate why Defendant Vanguard was stating that he owed massively inflated violation charges, a user would already have to have known what supposed agreements he had entered into by using the parking garage in the first place. Additionally, the framing of the language in the terms of service includes an assertion that the website user is already bound by the "valid and enforceable" Parking Agreement, whatever it was, so a user would not have fair notice that by continuing to use the website, the user may be agreeing to unknown terms to which he had not already agreed.

Further, the website includes language purportedly authorizing Defendant Vanguard to unilaterally change the terms of "the documents that form an integral part of

the Terms." Under Defendant Vanguard's interpretation, that would mean the Parking Agreement itself could be unilaterally changed by Defendant Vanguard, with the only "notice" being posting the agreement somewhere on the website. Such unilateral ability to modify the terms of an agreement would render the agreement illusory and unenforceable. *See Trimble v. Entrata, Inc.*, No. 25-1975, 2026 WL 2317837, at *5 (4th Cir. Aug. 11, 2026) (holding that a clause stating that "[t]his Agreement may change from time to time, so please review it when you visit [the website]" rendered the arbitration provision illusory and unenforceable); *Coady v. Nationwide Motor Sales Corp.*, 32 F.4th 288, 292–93 (4th Cir. 2022).

Finally, the reference to the "binding arbitration clause" in "Parking Agreement" in the Terms does not save Defendant Vanguard's Motion, because nothing about that statement alone alerts a user to the scope and terms of any such arbitration clause. The Fourth Circuit addressed a squarely analogous circumstance in *Marshall v. Georgetown Mem'l Hosp.*, 112 F.4th 211, 218 (4th Cir. 2024). There, the Fourth Circuit ruled that a webpage that prominently stated "ARBITRATION NOTICE: THIS APPLICATION AND APPLICATION PROCESS IS SUBJECT TO ARBITRATION PURSUANT TO THE SOUTH CAROLINA UNIFORM ARBITRATION ACT…" did not put a user on notice of the specifics of an arbitration provision that was much further down the webpage, where a user could submit an application through the webpage without scrolling down to that section of the page. The Court reasoned:

> the duty-to-read rule has always excepted cases in which 'the writing does not appear to be a contract and the terms are not called to the attention of the recipient.' Transposed to the internet context, 'the duty to read does not morph into a duty to ferret out contract

> provisions when they are contained in inconspicuous hyperlinks,' or can be found only by scrolling down through additional screens.

*Id.* (*quoting Starke v. SquareTrade, Inc.*, 913 F.3d 279, 289 (2d Cir. 2019); *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 32 (2d Cir. 2002)). In *Marshall*, the arbitration provision the defendant was seeking to enforce was at least present further down the webpage – in this case, it neither appears on the page at all or is even linked. Accordingly, under those same principles, the argument for arbitration in this case is even weaker than the argument that the Fourth Circuit held was insufficient in *Marshall*.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Motion be denied.

Date: September 8, 2026

Respectfully submitted,

/s/ Joseph Mack________________
Joseph Mack
(D. Md. Bar No. 29021)
The Law Offices of Joseph S. Mack
PO Box 65066
Baltimore, MD 21209
Tel. (443) 423-0464
joseph@macklawonline.com

***Attorney for Named Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served on all parties via the Court's Electronic Court Filing system this 8th day of September, 2026.

/s/Joseph Mack__________
Joseph Mack