# EXHIBIT A

*Cheezum v. Vivid Seats, Inc.*, No. MJM-25-3432, 2026 WL 2902132 (D. Md. Sept. 28, 2026)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **LAURA CHEEZUM,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civ. No. MJM-25-3432** |
| **v.** | * | |
| | * | |
| **VIVID SEATS, INC., et al.,** | * | |
| | * | |
| **Defendants.** | * | |

* * * * * * * * * *

## MEMORANDUM OPINION AND ORDER

Plaintiff Laura Cheezum ("Plaintiff") initiated this putative class action against defendants Vivid Seats, Inc. and Vivid Seats, LLC (collectively, "Vivid Seats" or "Defendants"), alleging violations of the Maryland Consumer Protection Act ("MCPA"). *See* ECF No. 2 (Compl.). This matter is before the Court on Vivid Seats' Motion to Compel Arbitration or, in the Alternative, Dismiss Class Action Complaint, ECF No. 5, and Plaintiff's Motion to Certify Question of Law to the Supreme Court of Maryland, ECF No. 19.[1] The motions are fully briefed, and a hearing is not necessary to resolve them. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth below, the Court shall grant Defendants' motion to dismiss, dismiss the class action complaint without prejudice, and deny Plaintiff's motion.

## I. PROCEDURAL BACKGROUND

Plaintiff initiated this action in the Circuit Court of Maryland for Caroline County seeking class certification, an award of damages, and other relief. ECF Nos. 1 & 2. Defendants removed

[1] Also pending before the Court is Vivid Seats' Motion for Leave to Respond to Plaintiff's Notice of Supplemental Authority, ECF No. 23, which shall be granted.



Dockets.Justia.com

the action to this Court under 28 U.S.C. §§ 1332, 1441, and 1446. ECF No. 1. The class action complaint (the "Complaint") Plaintiff filed in state court is her operative pleading in this matter. *See* ECF No. 2. After removal, Defendants filed a Motion to Compel Arbitration or, in the Alternative, Dismiss Class Action Complaint. ECF No. 5. Plaintiff responded in opposition, ECF No. 14, and Defendants replied in further support of its motion, ECF No. 18. Plaintiff later filed a Motion to Certify Question of Law to the Supreme Court of Maryland, seeking Maryland's highest court's clarification on "[w]hether the [MCPA], Md. Code Ann., Com. Law § 13-310.1(d) provides an independent basis for consumer relief when a 'secondary ticket exchange' violates the MCPA § 13-310.1(b)[.]" ECF No. 19 at 1. Defendants responded in opposition to that motion, ECF No. 20, and Plaintiff replied in support of her motion, ECF No. 21. Subsequently, Plaintiff filed a notice of supplemental persuasive authority in opposition to Defendants' alternative motion to dismiss, ECF No. 22, and Defendants filed a brief response, ECF No. 23.

## II. FACTUAL BACKGROUND

### A. Allegations from the Complaint

Plaintiff is a Maryland resident, and Defendants are companies formed under Delaware law with their principal place of business in Illinois. Compl., ¶¶ 15–17. Vivid Seats owns and operates a website, http://www.vividseats.com, and a smartphone application that allow "third-party buyers, sellers, and partners to buy, sell, and resell tickets[]" to live events. *Id.* ¶¶ 18, 41–44. In or about February 2025, Plaintiff visited Vivid Seats' website from her home in Maryland to purchase tickets for a live event in Pennsylvania. *Id.* ¶ 86. Vivid Seats initially advertised the two tickets Plaintiff selected at a price of $225 each, but as Plaintiff progressed through the online transaction, a service fee of $90.62 and electronic transfer fee of $2.50 were added to the total for each ticket. *Id.* ¶¶ 90–91. When Plaintiff first selected the tickets, she was unaware that they would

cost an additional $186.24 in mandatory added fees. *Id.* ¶ 92. Due to "pressure exerted by Vivid Seats in its purchase flow," including using a ten-minute countdown clock, informing customers that their "tickets are not being held" and that they must "checkout quickly to get [their] preferred tickets," and hiding the true ticket prices until the very last step of the transaction, Plaintiff purchased the tickets despite the previously undisclosed fees. *Id.* ¶¶ 56, 58, 64, 76, 94. Plaintiff alleges that this "bait-and-switch pricing method," referred to as "drip pricing," "is an unfair and deceptive practice." *Id.* ¶¶ 21–40.

**B. Additional Facts from the Evidentiary Record**

Plaintiff used the electronic payment service Klarna as her payment method to purchase the tickets at issue in this case. ECF No. 5-2 (Bakal Decl.),[2] ¶ 3, Ex. 1. To complete her order using this method, Plaintiff had to click a pink button on the webpage labeled "Klarna. Express Checkout[.]" *Id.* ¶ 5. This button was on the bottom of the webpage under a section header "Confirm and Place Order[.]" *Id.* In between the pink Klarna button and the "Confirm and Place Order" section header was a block of text informing Plaintiff that by clicking the pink Klarna button, she was "agree[ing] to [Vivid Seats'] Terms of Use." *Id.* The phrase "Terms of Use" appeared in the same pink color as the Klarna button and hyperlinked to Vivid Seats' Terms of Use effective October 27, 2024. *Id.*; *see also id.*, Exs. 2 & 3.

The first page of the linked Terms of Use document states, in bold, capitalized letters, that the document contains an arbitration and dispute resolution provision, a class action waiver, and a right to opt out. *Id.* ¶ 7, Ex. 3 at 1. A provision under the header "Arbitration and Dispute Resolution" states that, apart from specified exceptions,

[2] The declarant Riva Bakal is an executive employee of Vivid Seats with personal knowledge of the design and operation of Vivid Seats' website and of Vivid Seats' business records. *See* Bakal Decl. ¶¶ 1–4.

> any and all disputes, controversies, disagreements, or claims arising in any way out of or relating in any way to . . . any tickets or other items sold or purchased on or through the site . . . shall be fully, finally, and exclusively resolved through final and binding individual arbitration rather than in court.

*Id.* ¶ 8, Ex. 3 at 13–14. The class action waiver provision states that

> any proceeding to resolve any dispute, claim, or controversy will be brought and conducted ONLY IN THE RESPECTIVE PARTY'S INDIVIDUAL CAPACITY AND NOT AS PART OF ANY CLASS (OR PURPORTED CLASS) . . . ACTION OR PROCEEDING ("Class Action"). . . . You and Vivid Seats AGREE TO WAIVE THE RIGHT TO PARTICIPATE AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS ACTION. You and Vivid Seats EXPRESSLY WAIVE ANY ABILITY TO MAINTAIN A CLASS ACTION IN ANY FORUM.

*Id.* ¶ 9, Ex. 3 at 21.

An opt-out provision allows the consumer to reject the arbitration agreement and class action waiver by notifying Vivid Seats within 30 days of accessing the website or mobile application or purchasing "any product" from or through Vivid Seats. *Id.*, Ex. 3 at 20. Vivid Seats could not find any record of Plaintiff opting out of either provision. *Id.* ¶ 7.

The Terms of Use also contain a provision under the header "Changes in Terms and Conditions," which states that "Vivid Seats reserves the right, in its sole discretion, to change [its] Sales Terms at any time." *Id.*, Ex. 3 at 23. A customer's continued use of Vivid Seats "after the date [they] first accepted the Sales Terms (or accepted any subsequent changes to the Sales Terms)," and after Vivid Seats makes changes to those terms, are "deemed acceptance of those changes." *Id.* Customers can, however, opt out of any changes Vivid Seats makes to its terms. *Id.*

## III. MOTION TO COMPEL ARBITRATION

The primary relief sought in Defendants' motion is an order directing Plaintiff to bring her claims in arbitration pursuant to the arbitration agreement contained within Defendants' Terms of

Use. Defendants argue this relief should be granted because all requirements of the standard for compelling arbitration are satisfied. ECF No. 5-1 at 6. Plaintiff argues that Defendants' motion fails because there is no enforceable arbitration agreement here. ECF No. 14 at 5–12. She contends that she was never presented with, nor did she assent to, Defendants' Terms of Use, and the arbitration agreement is illusory, thus unenforceable, because the change-of-terms clause contained therein gives Defendants the unilateral right to modify the terms at will and without prior notice. *Id.*

**A. Standard of Review**

"The Federal Arbitration Act [(the "FAA" or the "Act")] governs arbitration agreements." *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023). The statute provides that, in any contract involving interstate commerce, a provision in which the parties agree to arbitrate their disputes shall be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided . . . ." 9 U.S.C. § 2. "The Act provides 'two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4.'" *Roach v. Navient Sols., Inc.*, 165 F. Supp. 3d 343, 346 (D. Md. 2015) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983)). "The Act reflects an emphatic federal policy in favor of arbitral dispute resolution[]" and requires courts to resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration[.]" *Id.* (first quoting *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011), then quoting *Moses H. Cone*, 460 U.S. at 24–25); *see also Mey v. DIRECTV, LLC*, 971 F.3d 284, 292 (4th Cir. 2020) (citation omitted). Still, whether a claim must be arbitrated remains "at bottom a question of contract interpretation: a party cannot be required to arbitrate a dispute if it has not contractually agreed to do so." *Roach*, 165 F. Supp. 3d

at 346. The FAA allows a party to move "to compel arbitration and stay [a court] proceeding pending resolution of the arbitration." *Meena Enters., Inc. v. Mail Boxes Etc.*, Civ. No. DKC 12-1360, 2012 WL 4863695, at *2 (D. Md. Oct. 11, 2012) (citing 9 U.S.C. §§ 3–4).

"Motions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *Ford v. Genesis Fin. Sols., Inc.*, 726 F. Supp. 3d 441, 448 (D. Md. 2024), *aff'd*, No. 24-1341, 2025 WL 1540933 (4th Cir. May 30, 2025) (quoting *PC Constr. Co. v. City of Salisbury*, 871 F. Supp. 2d 475, 477–78 (D. Md. 2012)). "When, as here, the formation of an arbitration agreement is in dispute, '[t]reating [the] motion to compel arbitration as a motion for summary judgment is proper.'" *Id.* (quoting *Cherdak v. ACT*, Inc., 437 F. Supp. 3d 442, 454 (D. Md. 2020)); *see also Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 233–34 (4th Cir. 2019) ("To decide whether 'sufficient facts' support a party's denial of an agreement to arbitrate, the district court is obliged to employ a standard such as the summary judgment test."). "In applying [a summary judgment] standard, the court is entitled to consider materials other than the complaint and its supporting documents." *Berkeley Cnty. Sch. Dist.*, 944 F.3d at 234 (citation omitted).

**B. Discussion**

In deciding whether to compel arbitration, the Court must first determine whether an enforceable agreement to arbitrate exists between the parties.

"Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 501 (4th Cir. 2002). "Under Maryland law, to be binding and enforceable, an arbitration agreement must be a valid contract[]" and "supported by consideration." *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005) (citing *Cheek v. United Healthcare of Mid-Atl., Inc.*, 835 A.2d 656, 661 (Md. 2003)). "In

Maryland, consideration may be established by showing a benefit to the promisor or a detriment to the promisee." *Cheek*, 835 A.2d at 661 (internal quotation marks and citation omitted). "A 'promise becomes consideration for another promise only when it constitutes a binding obligation.'" *Hill*, 412 F.3d at 543 (quoting *Cheek*, 835 A.2d at 661). In contrast, an "illusory promise"—one that "does not actually bind or obligate the promisor to anything"—"cannot constitute consideration." *Id.* (quoting *Cheek*, 835 A.2d at 662).

"An arbitration agreement is supported by adequate consideration where both parties agree to be bound by the arbitration process." *Bowers v. WebstaurantStore*, Civ. No. DKC 20-3516, 2021 WL 4864220, at *1 (D. Md. Oct. 19, 2021) (citing *Johnson v. Circuit City Stores*, 148 F.3d 373, 378 (4th Cir. 1998)). But "[a] promise . . . is illusory if the promisor retains an unlimited right to decide later the nature or extent of his performance." *Questar Builders, Inc. v. CB Flooring, LLC*, 978 A.2d 651, 670 (Md. 2009) (citing *Cheek v. United Healthcare of Mid-Atl., Inc.*, 835 A.2d 656, 662 (Md. 2003)) (internal quotation marks omitted). And "illusory contracts are unenforceable." *Id.* (citing *Cheek*, 835 A.2d at 662); *see also Johnson v. Cont'l Fin. Co., LLC*, 131 F.4th 169, 180 (4th Cir. 2025), *cert. dismissed sub nom. Cont'l Fin. Co. v. Johnson*, 146 S. Ct. 1367 (2026) (finding agreement illusory where there was no "constraint on [defendant's] ability to escape its contractual obligations whenever it sees fit"). "In the context of an arbitration agreement, . . . a promise to arbitrate is illusory—and thus cannot constitute the consideration necessary to support a binding contract—if [one party] reserves the right to alter, amend, modify, or revoke the Arbitration Policy . . . at any time with or without notice." *Trimble v. Entrata, Inc.*, 186 F.4th 251, 258 (4th Cir. 2026) (quoting *Coady v. Nationwide Motor Sales Corp.*, 32 F.4th 288, 292 (4th Cir. 2022)); *see also Cheek*, 835 A.2d at 662.

Plaintiff contends that the arbitration agreement at issue here lacks consideration and is illusory because Vivid Seats retains "the right, in its sole discretion, to change [its] Sales Terms at any time[]" without advance notice to customers. ECF No. 14 at 10–11 (quoting Bakal Decl., Ex. 3 at 23). Defendants respond that their Terms of Use are not illusory because they bind both Vivid Seats and Plaintiff and include an opt-out option for customers, and Vivid Seats' right to modify the terms is "limited to the 'extent permitted by applicable law.'" ECF No. 18 at 6–9 (quoting Bakal Decl., Ex. 3 at 23). The Court agrees with Plaintiff.

The Terms of Use allow users to opt out of any modifications Vivid Seats makes only after the modifications have already been made and posted on Vivid Seats' website. *See* Bakal Decl., Ex. 3 at 23. Any modification Vivid Seats makes becomes "effective immediately," *id.*, without any requirement that Vivid Seats give notice to users who agreed to the now outdated Terms of Use. The requirement that Vivid Seats post the modified terms to its website is precisely the "type of after-the-fact, ineffectual notice" the Fourth Circuit rejected in *Johnson*, 131 F.4th at 180, and *Trimble*, 186 F.4th at 258–60. It "is not only likely to elude" Vivid Seats' customers; "[i]t also places no constraint on [Vivid Seats'] ability to escape its contractual obligations whenever it sees fit." *Johnson*, 131 F.4th at 180; *see also Trimble*, 186 F.4th at 260 ("[T]he purported ability of Appellee to opt out of accessing the website and thereby decline the modified terms is illusory because it exists solely at Appellant's pleasure.").

Judge Bredar's reasoning in *Egahi v. WorldRemit Corp.*, Civ. No. JKB-24-03728, 2026 WL 73776 (D. Md. Jan. 9, 2026), is persuasive and applicable here:

> Defendant asserts that . . . [its] modification clause . . . mandates [advance notice] because [d]efendant must post the updated user agreement on its website. And [d]efendant points out that users can terminate the agreement once they learn of the modification. But that is not necessarily true. If [d]efendant wanted to, it could change the terms of acceptance and cancellation and make [p]laintiff bound to

> the agreement as soon [as] he accesses [d]efendant's website, or [d]efendant could forbid [p]laintiff from terminating the agreement. *Johnson* [*v. Cont'l Fin. Co., LLC*] stands for the proposition that one party to an arbitration agreement cannot have the power to change terms without first giving the other party notice and an opportunity to terminate the contract. . . . [T]he arbitration agreement lacks consideration and is not an enforceable contract.

*Id.* at *5.

Defendants argue that their position is supported by the Fourth Circuit's decision in *Meadows v. Cebridge Acquisition, LLC*, 132 F.4th 716 (4th Cir. 2025). ECF No. 18 at 7. In *Meadows*, the Fourth Circuit considered consolidated appeals brought by defendant-appellant Suddenlink, a cable and internet service provider, arising from the denial of its motions to compel arbitration. 132 F.4th 716 at 722. Plaintiff-appellees argued that because the arbitration agreement gave Suddenlink "the ability to unilaterally modify [it][,]" "the consideration [given was] illusory." *Id.* at 727–28. The court held that, although "Suddenlink could modify the arbitration agreement 'in its sole discretion[,]'" because the company was required to "'*notify* [customers] of amendments' to the arbitration agreement," and the terms allowed customers to opt out after receiving notice, "a '[c]ustomer's continued use of the [services] *following notice of such change*, modification or amendment . . . [constituted] acceptance." *Id.* at 728 (citations omitted) (emphasis added). Because Vivid Seats' Terms of Use do not require the company to provide customers with notice of changes it makes to its terms, the arbitration agreement at issue in *Meadows* is distinguishable from the one at issue here.[3]

Defendants' argument that its right to modify the Terms of Use is "limited to the 'extent permitted by applicable law[,]'" ECF No. 18 at 8, misses the mark for the same reasons a similar

[3] Other cases relied upon by Defendants are similarly distinguishable. *See, e.g.*, *Citizens Telecomm. Co. of W. Va. v. Sheridan*, 799 S.E.2d 144, 147 (W.Va. 2017) (involving "a provision that permitted Frontier to *propose* changes to the terms, *upon notice to customers*[]") (emphasis added).

argument failed in *Johnson*. There, the parties' agreement allowed the defendant to change its terms "at its 'sole discretion, upon such notice . . . required by law.'" *Johnson*, 131 F.4th at 180 (citation omitted). The modification provision in the Terms of Use at issue here provides that the customer's use of Vivid Seats' website after it posts modified terms "constitutes [the customer's] acceptance of the revised agreement to the extent permitted by applicable law." Bakal Decl., Ex. 3 at 23. But provisions like these, by their own terms, place no greater limitation on the defendants' unilateral modification of the contract than that already imposed by law. *See Johnson*, 131 F.4th at 180 ("The plain language of the clause merely commits Continental to do what it is already required to do by law."). Provisions of this type "cannot furnish consideration. A bargained-for-exchange by definition assumes that each party will undertake some obligation beyond those already imposed by law." *Id.* (citation omitted).

In sum, the Court finds that the arbitration agreement contained within Vivid Seats' Terms of Use is unsupported by consideration because Vivid Seats' unilateral right to modify their terms without notice renders its promises illusory. Accordingly, the Court finds the arbitration agreement to be unenforceable. *See Cheek*, 835 A.2d at 661 (citations omitted) ("To be binding and enforceable, contracts ordinarily require consideration."). Defendants' motion to compel arbitration is denied.

## IV. MOTION TO DISMISS

In the alternative to compelling arbitration, Defendants seek dismissal of the Complaint for failure to state a claim upon which relief can be granted because Plaintiff does not allege that she relied on any misrepresentation or omission by Vivid Seats to her detriment and does not allege actual loss or injury because of Vivid Seats' allegedly unfair and deceptive practices, both of which

are required to state a claim under the MCPA. ECF No. 5-1 at 14–17. Plaintiff argues that she alleges plausible violations of the MCPA. ECF No. 14 at 12–20.

**A. Standard of Review**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may seek dismissal for "failure to state a claim upon which relief can be granted[.]" To survive the challenge, the non-moving party must have pleaded facts demonstrating "a claim to relief that is plausible on its face." *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim for relief is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that a defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678)).

When ruling on a Rule 12(b)(6) motion, the court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022). But the court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *U.S. ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *U.S. ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 212 (4th Cir. 2019)). The court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

**B. Discussion**

Plaintiff asserts two causes of action under the MCPA. In Count I of the Complaint, Plaintiff alleges that Vivid Seats violated various provisions of Md. Code Ann., Com. Law ("C.L.") § 13-301, by making certain misrepresentations in advertising about the price of the tickets she purchased and failing to disclose information about the "the true price of the tickets[]" and the fees charged in connection with the ticket purchase. Compl. ¶ 124. In Count II, Plaintiff alleges that Vivid Seats engaged in "misleading acts or practices" in violation of C.L. § 13-310.1(b) by failing to disclose the total ticket price and to itemize all charges that comprise the total price in the ticket listing or at the initial step of the transaction, and increasing the total price after the initial step. *Id.* ¶¶ 136–42. Defendants argue that "Plaintiff's MCPA claims should be dismissed because Plaintiff has not alleged that she relied on any misrepresentation or omission by Vivid Seats to her detriment." ECF No. 5-1 at 14.

The MCPA provides that "any person may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by [the Act]." C.L. § 13-408(a). "A consumer bringing a private action under § 13-408 must allege (1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 319 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014) (citation omitted). To establish reliance upon an unfair or deceptive practice that is an affirmative misrepresentation, the plaintiff must show that she "reasonably believes in the full truth of the misrepresentation . . . ." *Bank of Am., N.A. v. Jill P. Mitchell Living Tr.*, 822 F. Supp. 2d 505, 536 (D. Md. 2011). "Where the unfair or deceptive practice is an omission, 'a consumer relies on [that] material omission under the MCPA where it is substantially likely that the consumer would not have made the choice in question had the commercial entity disclosed the omitted

information." *Spotswood v. Hertz Corp.*, Civ. No. WMN-16-1200, 2016 WL 6879938, at *8 (D. Md. Nov. 22, 2016) (quoting *Bank of Am.*, 822 F. Supp. 2d at 535).

To survive a motion to dismiss her MCPA claim, Plaintiff must allege facts to suggest that she would not have purchased the product at issue if the defendant had not made the purported misrepresentations and omissions. *See id.* ("To state a viable MCPA claim, Plaintiff would need to allege that had the omitted information regarding these challenged fees been included in the Agreement, he would have made a different choice and not rented a car from Defendant. Plaintiff has not made that allegation in the First Amended Complaint and, accordingly, his MCPA claim will be dismissed."); *Webb v. Carrington Mortg. Servs. LLC*, Civ. No. SAG-24-1950, 2025 WL 213950, at *12 (D. Md. Jan. 16, 2025) ("Plaintiff has not alleged that she would have done anything differently had Carrington provided different information or that Carrington's alleged misrepresentation or material omission induced her to take an action from which she suffered an identifiable loss or injury."); *Turner v. JPMorgan Chase, N.A.*, Civ. No. TDC-14-0576, 2015 WL 5021390, at *5 (D. Md. Aug. 21, 2015) (dismissing MCPA claim because plaintiff "at no point asserts how she relied on the alleged misrepresentations to her detriment, either by taking actions that she otherwise would not have taken, or by refraining from taking actions that she otherwise would have taken"). Formulaic and "perfunctor[y]" allegations that a plaintiff "reasonably relied upon the direct and indirect material acts and actions of" the defendant are insufficient to satisfy this requirement. *Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370, 380 (4th Cir. 2022). Additionally, "[t]he injury [alleged] must be 'objectively identifiable . . . [i]n other words, the consumer must have suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance' on the misrepresentation." *Ayres v. Ocwen Loan Servicing,*

*LLC*, 129 F. Supp. 3d 249, 270 (D. Md. 2015) (third alteration in *Ayres*) (quoting *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 277 (Md. 2007)).

Vivid Seats argues that the Complaint fails to state a claim because Plaintiff does not allege that she relied on any misrepresentation or omission by Vivid Seats to her detriment, nor does she allege actual loss or injury because of Vivid Seats' allegedly unfair and deceptive practices. ECF No. 5-1 at 14–17. The Court agrees.

Plaintiff alleges that the "advertised price of $225 per ticket was a substantial factor in [her] decision to purchase the tickets[,]" Compl. ¶ 93, but she also acknowledges that Vivid Seats disclosed the true total ticket price at the final step of the transaction and that, even after seeing the higher price, she chose to complete the purchase anyway, *see id.* ¶ 94. The Court cannot reasonably infer from these facts that Plaintiff would not have purchased the tickets if Vivid Seats had not made the alleged misrepresentations and omissions. The only reasonable inference to be drawn is that Plaintiff acted voluntarily in completing the transaction, aware of the higher price charged. Therefore, she fails to allege that she plausibly "suffered an identifiable loss[]" due to Vivid Seats' alleged misrepresentations or omissions. *Ayres*, 129 F. Supp. 3d at 270 (quoting *Lloyd*, 916 A.2d at 277). Accordingly, the Court finds that Plaintiff fails to state a plausible claim for relief, and her Complaint must be dismissed without prejudice.

## V. MOTION TO CERTIFY QUESTION

Plaintiff seeks an order certifying a question of Maryland law to the Supreme Court of Maryland. ECF No. 19. Specifically, Plaintiff asks to certify whether C.L. § 13-310.1(d) provides

an independent basis for consumer relief when a "secondary ticket exchange" violates § 13-310.1(b). *Id.* at 1. Defendants oppose the motion. ECF No. 20.

Under the Maryland Certification of Questions of Law Act, a federal district court may certify a question of law to the Supreme Court of Maryland. Md. Code Ann., Cts. & Jud. Proc.§ 12-603 (the "Certification Act"). The Certification Act provides that:

> The Supreme Court of Maryland . . . may answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this State.

*Id.* Accordingly, "the Fourth Circuit has prescribed a two-step inquiry for determining whether certification to [Maryland's highest court] is appropriate." *Liberty Mut. Ins. Co. v. Murphy*, No. 1:20-CV-01961-SAG, 2021 WL 2784264, at *2 (D. Md. July 2, 2021).

> First, the referring Court must consider whether the question at hand "may be determinative of an issue in pending litigation." *Antonio v. SSA Sec., Inc.*, 749 F.3d 227, 234 (4th Cir. 2014) (quoting Md. Code Ann., Cts. & Jud. Proc. § 12-603). Second, the Court must look to whether there is a "controlling appellate decision, constitutional provision, or statute of [Maryland]." *Id.* (quoting Md. Code Ann., Cts. & Jud. Proc. § 12-603).

*Id.*

The question of Maryland law Plaintiff presents may qualify for certification under the Certification Act. First, whether C.L. § 13-310.1(d)—a relatively new provision of the MCPA—provides an independent basis for consumer relief apart from C.L. § 13-408 "may be determinative of an issue" in this case. Md. Code Ann., Cts. & Jud. Proc.§ 12-603. Second, this Court is unaware of any "controlling appellate decision" on the question Plaintiff raises. Still, this Court finds no ambiguity or lack of clarity among the controlling provisions of the MCPA.

Importantly, however, a question of state law need not be certified "[j]ust because [it] qualifies for certification[.]" *Doe v. Chesapeake Med. Sols., LLC*, Civ. No. SAG-19-2670, 2020

WL 917061 (D. Md. Feb. 26, 2020) (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 390–91 (1974)). The decision of whether to certify a question of state law "rests in the sound discretion of the federal court." *Lehman Bros.*, 416 U.S. at 391. "In exercising such discretion, federal courts may decide not to certify a question to a state court where the federal court can reach a 'reasoned and principled conclusion.'" *Bel Air Auto Auction, Inc. v. Great N. Ins. Co.*, 534 F. Supp. 3d 492, 502 (D. Md. 2021), *aff'd*, No. 21-1493, 2022 WL 2128586 (4th Cir. June 14, 2022) (citation omitted). Indeed, the Fourth Circuit has instructed that federal courts should certify questions to the state court "[o]nly if the available state law is clearly insufficient . . . ." *Id.* (quoting *Roe v. Doe*, 28 F.3d 404, 407 (4th Cir. 1994)); *see also Passaro v. Virginia*, 935 F.3d 243, 252–53 (4th Cir. 2019). When considering a question of state law, the federal court's role "is to 'interpret the law as it believes that state's highest court of appeals would rule.'" *Liberty Mut. Ins. Co.*, 2021 WL 2784264, at *2 (quoting *Abadian v. Lee*, 117 F. Supp. 2d 481, 485 (D. Md. 2000)). "If sufficient law exists to enable a court to arrive at a principled conclusion, the court should resolve the case and avoid 'prolonging the proceedings' through certification." *Jones v. Bunns*, Civ. No. GLS-22-1076, 2023 WL 3931994, at *4 (D. Md. June 9, 2023) (quoting *Arlington v. Coleen, Inc.*, Civ. No. AMD 00-191, 2001 WL 34117735, at *5 (D. Md. Mar. 29, 2001)).

Even assuming that Plaintiff's state-law question qualifies for certification under the Certification Act, this Court would decline to certify it. Plaintiff does not present the kind of "substantial, unresolved question[] of state law" appropriate for certification. *Liberty Mut. Ins. Co.*, 2021 WL 2784264, at *2.

C.L. § 13-408(a) clearly provides a private right of action for "any person" who suffers "injury or loss . . . as the result of a practice prohibited by this title." Section § 13-310.1(d) does not; instead, that provision defines a practice that is "prohibited" and therefore enforceable through

a private suit brought under § 13-408(a). Specifically, § 13-310.1(d) prohibits a "secondary ticket exchange" from "provid[ing] a marketplace for the sale or resale of a ticket that violates [§ 13-310.1]." Section 13-310.1(b) imposes certain requirements on "secondary ticket exchanges, ticket issuers, and resellers[,]" including requirements that they:

> (i) Clearly and conspicuously disclose the total price of the ticket, including all fees and taxes other than shipping costs that are not determinable at a step in the transaction;
>
> (ii) Provide an itemized listing of all charges that comprise the total price of the ticket, including all fees and taxes; and
>
> (iii) Identify the seat number and zone or section of the ticket, to the extent applicable to the seat and venue.

Section § 13-310.1(d) then expressly forbids "secondary ticket exchanges" from "provid[ing] a marketplace for the sale or resale of a ticket that violates" § 13-310.1(b). Here, Plaintiff alleges that Vivid Seats is a "secondary ticket exchange" that "provide[s] a marketplace for the sale or resale of a ticket[,]" Compl. ¶ 4, and that marketplace violates § 13-310.1(b) by failing to meet the requirements set in that subsection, *id.* ¶¶ 136–42. C.L. § 13-408(a) provides a private right of action to seek damages for such violations. There is no language in § 13-310.1(d) to suggest that it, independently of § 13-408(a), provides its own "basis for consumer relief." ECF No. 19 at 1.

The relevant MCPA provisions are not "clearly insufficient" to answer Plaintiff's question. *Roe*, 28 F.3d at 407. The plain language of the relevant provisions supports the "reasoned and principled conclusion[,]" *Bel Air Auto Auction*, 534 F. Supp. 3d at 502, that § 13-310.1(d) does not provide a private right of action for consumers to sue "secondary ticket exchanges" for violations of § 13-310.1(b) independently of § 13-408(a). *See Clarksville Residents Against Mortuary Def. Fund, Inc. v. Donaldson Props.*, 162 A.3d 929, 942 (Md. 2017) (holding that Maryland courts interpret statutes according to their "plain language," and "[i]f the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous

and express a plain meaning, [courts] will give effect to the statute as it is written") (citation omitted).

Maryland courts analyze three factors "to determine whether a private cause of action exists," notwithstanding legislative silence, which are "(1) 'the presence or absence of an indication of legislative intent to create a private remedy'; (2) 'whether the plaintiff is one of the class for whose special benefit the statute was enacted'; and (3) 'whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff.'" *Baker v. Montgomery Cnty.*, 30 A.3d 267, 282 (Md. Ct. Spec. App. 2011), *aff'd*, 50 A.3d 1112 (Md. 2012) (quoting *Erie Ins. Co. v. Chops*, 585 A.2d 232, 237 (Md. 1991)). While it is apparent that Plaintiff, as a ticket purchaser, is among those § 13-310.1(d) was intended to protect, she identifies nothing in either the plain language or legislative history of this provision "from which [this Court] can glean any intent on the General Assembly's part to create an implied private right of action." *Fangman v. Genuine Title, LLC*, 136 A.3d 772, 790 (Md. 2016); *see also Baker*, 50 A.3d at 1125 ("[W]here the plain language of a provision weighs against implication of a private remedy, silence within the legislative history as to a private cause of action reinforces the decision not to find such a right implicitly.") (internal quotation marks and citation omitted). Furthermore, she offers no explanation of what purpose an implied private right of action under § 13-310.1(d) would serve within the legislative scheme when § 13-408(a) already provides a private right of action for violations of § 13-310.1(b) and (d).

Ultimately, Plaintiff offers no reason for this Court to believe that the Supreme Court of Maryland would find "an independent basis for consumer relief" in C.L. § 13-310.1(d) for

violations of C.L. § 13-310.1(b). ECF No. 19 at 1.[4] To certify Plaintiff's state-law question would serve only to further prolong these proceedings.

For all of the foregoing reasons, Plaintiff's motion to certify is denied.

## VI. ORDER

For the reasons stated herein, it is by the United States District Court for the District of Maryland hereby ORDERED that:

1. Defendants' Motion to Compel Arbitration or, in the Alternative, Dismiss Class Action Complaint (ECF No. 5) is GRANTED IN PART and DENIED IN PART;
2. Defendants' request to compel arbitration is DENIED;
3. The Complaint is DISMISSED without prejudice;
4. Plaintiff's Motion to Certify Question of Law to the Supreme Court of Maryland (ECF No. 19) is DENIED;
5. Defendants' Motion for Leave to Respond to Plaintiff's Notice of Supplemental Authority (ECF No. 23) is GRANTED;
6. Plaintiff SHALL FILE no later than **October 16, 2026**, either a motion for leave to amend the Complaint or notice that she does not seek leave to amend at this time.

September 28, 2026
Date

/S/
Matthew J. Maddox
United States District Judge

[4] Notably, Plaintiff did not even argue that § 13-310.1(d) may provide an independent basis for relief in opposition to Defendants' motion to dismiss. She raises this issue for the first time in her motion to certify, which she filed after Defendants' motion to dismiss was fully briefed.